THE STATE, EX REL. OHIO BELL TELEPHONE CO., APPELLANT,
*v.* KRISE ET. AL., APPELLEES.

[Cite as State, ex rel. Ohio Bell Telephone Co., v. Krise (1975), 42 Ohio St. 2d 247.]

(No. 74-532—Decided May 7, 1975.)

*Messrs. Jones, Day, Reavis & Pogue, Mr. Barry L. Springel* and *Ms. Kathleen B. Burke,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Michael J. Hickey* and *Mr. Jack H. Cook,* for appellees members of the Industrial Commission.

*Mr. Chester T. Freeman,* for appellee Forrest L. Ellars.

WILLIAM B. BROWN, J. The question presented is whether the Industrial Commission abused its discretion by deciding that histoplasmosis[1] as contracted by Forrest L.

---

[1]Histoplasmosis is discussed in Stedman's Medical Dictionary (22 Ed. 1972), page 581, as follows:

"[H]istoplasmosis. Darling's disease; an infectious disease usually caused by *Histoplasma capsulatum* and occasionally by *H. duboisii.* Cases of h. due to *H. duboisii* have thus far been limited to tropical Africa. Human infection with *H. capsulatum* is widely distributed in the world; however, the population of certain regions, such as the Mississippi-Missouri-Ohio river valleys, shows a high incidence of infection as measured by the histoplasmin skin test. The natural habitat of *H. capsulatum* is the soil, particularly soils contaminated

Ellars is a compensable occupational disease under the Workmen's Compensation Act.

R. C. 4123.68, in pertinent part, reads:

"Every employee who is disabled because of the contraction of an occupational disease as defined in this section * * * is entitled to * * * compensation * * *.

"The following diseases shall be considered occupational diseases and compensable as such when contracted by an employee in the course of his employment in which such employee was engaged at any time within twelve months previous to the date of his disablement and due to the nature of any process described in this section.

"SCHEDULE

"Description of disease or injury and description of process:

"* * *

"(BB) All other occupational diseases: A disease peculiar to a particular industrial process, trade, or occupation and to which an employee is not ordinarily subjected or exposed outside of or away from his employment."

Ohio Bell contends, in its sole proposition of law, that a claimant is not entitled to receive workmen's compensation benefits for a nonscheduled occupational disease if any

by the dejecta of fowl, birds, or bats; numerous epidemics have followed visits to, or work in, such areas. The infection is normally acquired by inhalation of spores of the fungus in dust. In the vast majority of persons infected, a primary, benign, pneumonitis is produced, similar in clinical features to primary tuberculosis. In occasional persons infected, the primary disease progresses to produce localized lesions in lung, such as pulmonary cavitation, or the typical disseminated disease of the reticuloendothelial system which is manifested by fever, emaciation, splenomegaly, leukopenia, etc."

Although the disease doesn't appear to have a litigious history, its contraction has been the subject of actions against employers who (1) had ordered an employee to clean out an attic where quite a few decomposed "animals" thought to be birds were present, without furnishing a mask (*Mowry* v. *Schmoll* [C. A. 8, 1971], 441 F. 2d 1271), and (2) had allowed "large amounts of pigeon excretion" to remain in the structure in which an employee worked. *Myers* v. *Plattsburgh* (N. Y. 1961), 13 App. Div. 2d 866.

one of the three statutory criteria is absent: (1) A disease contracted in the course of employment, (2) a disease peculiar to a particular industrial process, trade or occupation, and (3) a disease to which the claimant is not ordinarily subjected or exposed outside of or away from his employment. Inasmuch as that proposition is merely a restatement of R. C. 4123.68(BB), we must agree.

However, after finding no decision of this court which has authoritatively construed the latter two criteria,[2] we view this as a matter of first impression, and, with a mind to the admonition of the General Assembly to construe in favor of compensation,[3] we direct our inquiry to the meaning of subsection (BB).

Statutes similar to R. C. 4123.68 have been examined by the courts of Connecticut, and our sister states, Michigan and Pennsylvania.

Section 5223, Connecticut General Statutes, defined a compensable occupational disease as "a disease *peculiar to the occupation* in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such." (Emphasis ours.) That section was construed in *LeLenko* v. *Wilson H. Lee Co.* (1942), 128 Conn. 499, 503, 24 A. 2d 253, as follows:

"* * * The phrase 'peculiar to the occupation' is not here used in the sense that the disease must be one which originates exclusively from the particular kind of employ-

---

[2]Cases have purported to define "occupational disease" but only in the context of distinguishing it from compensable injuries. See, *e. g., Indus. Comm.* v. *Roth* (1918), 98 Ohio St. 34; *Indus. Comm.* v. *Cross* (1922), 104 Ohio St. 561; *Johnson* v. *Indus. Comm.* (1955), 164 Ohio St. 297.

In addition, in *Popham* v. *Indus. Comm.* (1966), 5 Ohio St. 2d 85, the decision of the Industrial Commission that arthrosis was not a compensable occupational disease, under the facts of the case, was held not an abuse of discretion by this court.

[3]R. C. 4123.95 reads:

"Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

ment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations * * *." At page 504, the court explained its interpretation:

"We cannot import into the conception of occupational disease under our law the element that the disease must be a usual or generally recognized incident of the employment. Compensation under our law is not to be denied because the injury would not have occurred except for the peculiar susceptibility of the individual worker. * * * [Citations omitted.] Occupational diseases result ordinarily in incapacity in a relatively small proportion of the number of employees subjected to the risk; indeed, if this were not so, economic considerations would require an abandonment of the employment or a change in its conditions to obviate the risk. There is nothing in the terms of our statutory definition of an occupational disease which suggests that to fall within it a disease must be one which is a usual or generally recognized incident of the employment, and the considerations we have suggested preclude our finding that such a legislative intent is to be implied. * * *"

Section 417.1, Michigan Code, defined "personal injury" to include "a disease * * * which is due to causes and conditions which are characteristic of and *peculiar to the business* of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable." (Emphasis added.)

In allowing an award to a dishwasher who contracted tuberculosis while working in a tuberculosis sanitarium, the Supreme Court of Michigan, in *Mills* v. *Detroit Tuberculosis Sanitarium* (1948), 323 Mich. 200, 209, 35 N. W. 2d 239, found greatly significant "* * * that the plaintiff was exposed in his employment to the risk of contracting tuberculosis *in a far greater degree and in a wholly different manner than is the public generally.*" (Emphasis added.)

Again construing Section 417.1, the Michigan Supreme Court, in *Underwood* v. *National Motor Castings Division* (1951), 329 Mich. 273, 276, 45 N. W. 2d 286, said:

"The term 'peculiar to the occupation' is defined in *Glodenis* v. *American Brass Co.*, 118 Conn. 29 (170 A. 146), and quoted in Mr. Justice Reid's opinion in *Samels* v. *Goodyear Tire & Rubber Co.*, 317 Mich. 149, as follows:

" 'The phrase, "peculiar to the occupation," is not here used in the sense that the disease must be one which originates *exclusively* from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations.' (Italics supplied.)

"The commission found that plaintiff's work presented a substantial hazard of back injury which was far in excess of that attending employment in general. \* \* \*"

In *Coombe* v. *Penegor* (1957), 348 Mich. 635, 642, 83 N. W. 2d 603, the court stated that ascertaining the presence or absence of causes and conditions characteristic of and peculiar to the work being done " '\* \* \* means, as declared in our more enlightened decisions, that a claimant \* \* \* is obligated to establish no more than that the conditions of his employment 'result in a hazard which distinguishes it in character from the general run of occupations.' \* \* \*"

Finally, we turn to an examination of a Pennsylvania statute strikingly similar to R. C. 4123.68(BB), Section 108(n) of the Occupational Disease Act (Section 1208, Title 77, Pa. Stat.), which, in pertinent part, reads:

"The term 'occupational disease' as used in this Act, shall mean only the following diseases:
[Schedule]
" '\* \* \*

"(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population."

Construing that section in a claim involving lung can-

cer resulting from exposure to asbestos, the Supreme Court of Pennsylvania, in *Utter* v. *Asten-Hill Mfg. Co.* (1973), 453 Pa. 401, 410, 309 A. 2d 583, said:

"The Superior Court concluded in *Scott* [v. *United States Steel* (1964), 203 Pa. Super. 459, 201 A. 2d 243] that recovery under Section 108(n) could not be sustained because cancer is neither peculiar to the steel industry nor uncommon in the general public. The underpinnings of the *Scott* decision, and the position urged upon us by the appellees here, is that the Legislature intended Section 108 (n) to apply only to the discovery of new diseases having their genesis in the claimants' occupations. *This interpretation severely limits the usefulness of Section 108(n)* as a vehicle for compensation in situations like this one where the decedents' fatal diseases, though not enumerated elsewhere in the act, are nonetheless generated by an occupational hazard. A more reasoned analysis of Section 108(n), and one which we adopt in this setting, is that cancer can be an occupational disease, though it exists in the general public, if it may be shown by competent evidence that a claimant's cancer *is peculiar to the claimant's occupation by its causes and the characteristics of its manifestation.* * * *" (Emphasis added.)

Other courts have rejected the proposition that a particular malady can not qualify as an "occupational disease" merely because the disease is not a natural incidence of the employment. See, *e. g., Ritter* v. *Hawkeye-Security Ins. Co.* (1965), 178 Neb. 792, 135 N. W. 2d 470; *Aleutian Homes* v. *Fischer* (Alaska 1966), 418 P. 2d 769. See, also, *Concannon* v. *Oregon Portland Cement Co.* (1968), 252 Ore. 1, 447 P. 2d 290; *Esposito* v. *N. Y. S. Willowbrook State School* (1972), 38 App. Div. 2d 985, 329 N. Y. Supp. 2d 355.

In light of the foregoing, it is the determination of this court that an occupational disease is compensable under R. C. 4123.68 (BB) where the following criteria exist: (1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which dis-

tinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally.

Although it appears that Ohio Bell conceded in the courts below the presence of the first criteria, that issue has been revived here. However, inasmuch as the basic subject matter thereof is causation, which requires a determination of fact, we defer to the judgment of the commission and resolve that issue in its favor.[4]

We find also that there was evidence of record upon which the commission could have found the existence of the remaining two criteria, and therefore that decision may not be disturbed as an abuse of discretion. *State, ex rel. Martin,* v. *Indus. Comm.* (1973), 34 Ohio St. 2d 109.

It appears that Ohio Bell's major contention is that by introducing in evidence a government survey purportedly showing the high incidence of histoplasmosis in the Central Ohio area, the issue of exposure need necessarily be resolved against the claimant. However, such survey, although received as evidence, is not binding upon the commission because the weight to be given evidence is within the commission's discretionary powers of fact finding. See quoted portion of *State, ex rel. Coen,* v. *Indus. Comm.* (1933), 126 Ohio St. 550, 552, in footnote 4 herein.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.

---

[4]In *State, ex rel. Coen,* v. *Indus. Comm.* (1933), 126 Ohio St. 550, 552, this court said:

"It is the duty of the Industrial Commission to decide all questions of fact within its jurisdiction. In performing such function, the commission should give to all the evidence before it, including the evidence of doctors in the employ of the Department of Industrial Relations, such weight as it finds that the evidence warrants. The Industrial Commission is not bound by the conclusions given by any person presenting the evidence, but must make its own conclusions from all the evidence before it."