PATTERSON, APPELLEE, *v.* CONNOR, ADMR., BUREAU OF WORKERS' COMPENSATION, ET AL., APPELLANTS.

(No. CA83-07-030—Decided August 13, 1984.)

*Barkan & Neff Co., L.P.A.,* and *J. Miles Gibson,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Lee M. Smith* and *Renny J. Tyson,* for appellants.

ZIEGEL, J. On April 2, 1979, while in the course of her employment as a private-duty nurse, appellee, Wilma G. Patterson, first recognized conditions described as a herniated disc, at the fifth cervical level of her neck. On June 12, 1979, she filed an injury claim with the Bureau of Workers' Compensation, which claim was disallowed by the district hearing officer and the regional board of review. She did not appeal beyond that level; but instead, on August 12, 1980, changed the nature of her claim from an injury claim to an occupational disease claim. The latter claim was disallowed through all administrative levels of the Industrial Commission and was then appealed to the common pleas court. After presentation of testimony and other evidence, the jury unanimously found that Patterson was entitled to participate in the Workers' Compensation Fund. From that verdict and judgment entered thereon, appellants have perfected their appeal.

Error is assigned in that the trial court erred in denying appellants' motion for a directed verdict made at the close of all the evidence. The basis for appellants' motion was that Patterson presented no evidence that she had an occupational disease. Before such a motion can be granted, Civ. R. 50(A)(4) requires the trial court to construe "* * * the evidence most strongly in favor of the party against whom the motion is directed * * *."

The definition of an "occupational disease" is set forth in R.C. 4123.68. That statute contains a list of various diseases which, *per se,* are considered under the circumstances described therein to be occupational. The disease which forms the basis of Patterson's

claim is a herniated disc, a condition not specifically enumerated in the statute. R.C. 4123.68(BB), however, makes provisions for occupational diseases not otherwise listed, as follows:

"* * * A disease peculiar to a particular industrial process, trade, or occupation and to which an employee is not ordinarily subjected or exposed outside of or away from his employment."

In construing R.C. 4123.68(BB), the Ohio Supreme Court set forth three prerequisites to its application, in the syllabus of *State, ex rel. Ohio Bell Tel. Co.*, v. *Krise* (1975), 42 Ohio St. 2d 247 [71 O.O.2d 226], as follows:

"An occupational disease is compensable under R.C. 4123.68(BB) where the following criteria exist: (1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."

The very next case reported, *State, ex rel. General Motors Corp.*, v. *Indus. Comm.* (1975), 42 Ohio St. 255 [71 O.O.2d 230], holds that claimants have the burden of establishing the above three criteria for "other occupational diseases." In the case at bar, appellants concede that the first criterion, that Patterson contracted the herniated disc in the course of her employment, has been established. It is argued, however, that no proof has been offered to substantiate the other two criteria.

The evidence established that Patterson began her employment with Dr. John L. McKitrick as a private-duty nurse in June 1977. She was responsible for the care of Dr. McKitrick's wife, a recovering stroke victim, between the hours of 8 a.m. and 4 p.m., Monday through Friday. Her duties including lifting and assisting Mrs. McKitrick to and from the restroom, bed, chair, shower, dinner table, and automobile. Additionally, she cleaned the residence, shopped for groceries, assisted Mrs. McKitrick with exercises, and drove her to shop, church, and the beauty parlor. It appears that Patterson weighed approximately one hundred eighty pounds and that Mrs. McKitrick weighed approximately one hundred fifty pounds. Prior to her employment by Dr. McKitrick, Patterson had approximately eight years' previous experience as a nurse's aide, during which time her work involved basically the same duties, consisting of lifting and turning patients. Patterson testified that she had been trained in the proper techniques for lifting and turning patients and had employed that training while working for the McKitricks. She first recognized a condition described as a herniated disc on April 2, 1979, while in the course of her employment. She had never in her life had a previous experience like the pain she experienced on this occasion. Thereafter, the pain continued unabated until eventually the situation was corrected surgically.

To establish her case, Patterson relied primarily on the testimony of Dr. William J. McCloud, a board-certified orthopedic surgeon, who was an examining physician, but not one who attended Patterson during the course of her illness. After preliminary matters and the propounding of a hypothetical question, the following occurred:

"Q. Now, doctor, using the same assumed facts, I need your opinion to a reasonable degree of medical certainty or possibility as to whether or not this herniated disc and the claimant's case is caused by the characteristics and manifestations of the condition of her employment generally.

"A. Yes, sir, I think it is.

"Q. Any reason for that opinion?

"A. Well, it is obvious that a ruptured disc could occur for any variety of reasons; but I think her occupation was such that the environment was such and did produce a set of circumstances that led to her ultimate force. [*Sic.*]

"Q. And, finally, doctor, using the same assumed facts, I would like your opinion as to whether or not her employment contracted a risk in greater degree and in a greater manner?

"A. Yes.

"Q. And any reason?

"A. Basically, the reasons are the same in that the primary reason being that the public generally is not required to do a lot of lifting improperly."

Appellants contend that the foregoing testimony is deficient even to meet the liberal requirements of Civ. R. 50(A)(4) in that there was no evidence tending to show that a herniated disc was an illness "peculiar to the claimant's employment." That specific question was not asked of the expert, McCloud. The gist of appellants' argument seems to be that, in order to show that an illness was "peculiar to the claimant's employment," it is necessary to show, statistically, that other persons in the same category of employment as the claimant have a greater risk of contracting a herniated disc than the public generally. This argument was rejected in *State, ex rel. Republic Steel Corp.,* v. *Indus. Comm.* (1980), 61 Ohio St. 2d 193 [15 O.O.3d 216], a mandamus action brought at a time when R.C. 4123.519 did not authorize appeals of occupational disease claims to the common pleas court.

In *Republic Steel, supra,* the claimant, a carpenter employed by relator, received an occupational disease allowance for chronic bronchitis, emphysema and duodentis as a result of exposure to dust and fumes in the course of his employment. Only one of the experts reporting to the Industrial Commission had used the word "peculiar" in his report; and, for reasons not apparent in the printed record, relator argued that this report should be stricken from the file, and that without it there was no proof that claimant's disease was peculiar to his employment. In rejecting this argument, the court held that even if the report which contained the word "peculiar" was stricken, "* * * other medical reports provide(d) some evidence that claimant's chronic condition was peculiar to his work where he had a long exposure to dust, fumes and vapors, and that the claimant had a greater risk of contracting bronchitis and emphysema and in a different manner than did the public generally." *Id.* at 195.

From this statement, it is clear that the emphasis in the *Republic Steel* case was not whether carpenters who worked at foundries were more susceptible to the disease than was the public generally, but rather whether the claimant, in his own particular daily activities, was more apt than the general public to become so afflicted. Thus, in the case at bar, we hold that even though the phrase "peculiar to claimant's employment" was not specifically used in McCloud's testimony, there was sufficient evidence from which the jury could infer that the illness of a herniated disc was peculiar to Patterson's own particular kind of employment. Therefore, appellants' first assignment of error is overruled.

Although it is not so stated in their brief, we view appellants' subparagraph, under their single assignment of error, concerning the ruling of the trial court on their motion for a directed verdict, wherein they contend that the verdict was against the manifest weight of the evidence, as a second assignment of error. The argument presented by appellants is that because the evidence established that herniated disc conditions are common to

the general public and among all professions and vocations, it must be concluded that a herniated disc is not "* * * peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally * * *" and that Patterson's employment as a nurse's aide does not create "* * * a risk of contracting the disease in a greater degree and in a different manner than in the public generally." *Krise, supra,* at syllabus. Indeed, even Patterson's expert, McCloud, testified that he had observed herniated discs in persons from all walks of life, and that many times this illness occurred without any detectable reason. Consistent with our conclusion that *Republic Steel, supra,*[1] stands for the proposition that the determination of whether an illness is peculiar to a claimant's employment, and whether a claimant's employment places her in a greater risk of contracting the disease in a greater degree and in a different manner than in the public generally, is based on the claimant's own particular kind of employment, not on employment of a similar nature generally, we hold that in the case *sub judice* there was sufficient evidence to sustain the jury's verdict. Questions of credibility and weight are for the jury.

Three recent decisions of the Ohio Supreme Court have dealt with the question of an appellate court reversing a trial court on the weight of the evidence. *Shear* v. *West American Ins. Co.* (1984), 11 Ohio St. 3d 162; *Cohen* v. *Lamko, Inc.* (1984), 10 Ohio St. 3d 167; *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77. Each of these cases emphasized the well-established rule of *C.E. Morris Co.* v. *Foley Construction*

*Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus, that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." In each of the above-cited cases, all of them being decided by the Ohio Supreme Court within a period of less than three months, the appellate courts' reversals on the weight of the evidence were each reversed by the Ohio Supreme Court on the grounds that the appellate courts did not give the trial court's decision the presumption of correctness it deserved. While each of the foregoing cases represented a bench trial, the fact that the verdict was reached by a jury should make no difference. Courts of appeal are given fair warning to proceed cautiously when considering the reversal of a trial court's findings on the weight of the evidence.

In the case before us, we have determined relative to the motion for a directed verdict that there were sufficient facts to warrant the trial court in not wresting the case from the jury. In the light of *Seasons Coal Co., supra, Cohen, supra,* and *Shear, supra,* we also conclude that by the same token, there was sufficient evidence to sustain the jury's verdict. The second assignment of error is hereby overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., and JONES, J. concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.