HOOPS, APPELLANT, *v.* MAYFIELD, ADMR., ET AL., APPELLEES.

(No. 7-87-3—Decided April 12, 1988.)

*James C. Ayers* and *Larrimer & Larrimer,* for appellant.

*Anthony J. Celebrezze, Jr.,* attor-

ney general, and *Roger W. Weiher,* for appellees Administrator and Industrial Commission of Ohio.

*Roger W. Heltzel* and *John M.D. Shady,* for appellee employer.

COLE, J. This is an appeal by the plaintiff, Emma J. Hoops, from a judgment of the Court of Common Pleas of Henry County which directed a verdict in favor of the defendants.

The plaintiff filed a complaint for an occupational disease with the Bureau of Workers' Compensation. On October 2, 1985, the district hearing officer denied her claim. The plaintiff further appealed to the Toledo Regional Board where her claim was denied on December 4, 1985.

The plaintiff then appealed to the Industrial Commission of Ohio where her claim was denied on June 2, 1986. Pursuant to R.C. 4123.519, the plaintiff appealed to the Court of Common Pleas of Henry County. On January 27, 1987, the common pleas court directed a verdict in favor of the defendants.

The plaintiff now appeals asserting a single assignment of error which is stated as follows:

"The trial court erred as a matter of law and abused its discretion when it found that the plaintiff has failed to offer or present probative evidence of a causal connection between her workplace and her disease and that she failed to present a *prima facie* case for participation in workers' compensation benefits pursuant to Section 4123.68(BB), Revised Code, and rendered a directed verdict in favor of defendants."

Civ. R. 50(A)(4) states in pertinent part:

"(A) Motion for Directed Verdict

"* * *

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

The appellant presented testimony from three treating physicians. Dr. Blough stated that from Hoops' symptoms "she probably had a chemical bronchitis." His medical opinion of the plaintiff's condition was "[w]ith the history of a complete workup the year before and stated that she hadn't had symptoms prior to that, prior to working in those circumstances, I assumed that she was one of those individuals that was idiosyncratic, that she would develop this type of thing any time she was exposed to this."

Dr. Watson testified next and he stated that although he would not consider airway hypersensitivity (*i.e.,* asthma) an occupational disease, "the symptoms of airway hypertension could be brought out by occupational contact with certain fumes, dust, or other pollutants." His diagnosis of Hoops' condition was "she was having symptoms which were exacerbated by her exposure to something, some fumes at work, and she seems to feel that this was related to working on the unit called the broach," and that the exacerbation of her condition of airway hypersensitivity occurred as a result of exposure to chemicals in the workplace.

Dr. Watson also testified to the relationship between Hoops' condition and her work environment. He stated that "her history as given to me was that when she was working on the broach or in the fumes that she did have symptoms, and when she got out of the area, they resolved and that is a situational factor which, for people

with airway hypersensitivity, would indicate a relationship or a, quote, triggering factor."

Hoops was exposed to chemicals such as "napthelene, chlorine, and sulphur in various concentrations." Dr. Watson stated that these chemicals are harmful if inhaled with chlorine or chlorinate substances, which substances are the most irritating.

Dr. Watson stated that these chemicals are harmful "[i]f inhaled in sufficient quantities to cause symptoms of bronchitis such as cough, chest tightness, and perhaps sputum production." He also stated that chlorine, if inhaled in a sufficient quantity, could cause the symptoms of which Hoops complained.

Hoops' physician of thirty-five years testified to her medical history. Dr. Overmier stated that he has never treated Hoops for asthma. He also stated that he has no history of Hoops' having any kind of illness involving her lungs or bronchial tubes.

The plaintiff asserts that she presented sufficient medical evidence to classify her condition as an "occupational disease" under R.C. 4123.68 (BB). The Supreme Court has set forth a test which must be met in order for a claimant to be compensated for an occupational disease under R.C. 4123.68 (BB).

In *State, ex rel. Ohio Bell Telephone Co.,* v. *Krise* (1975), 42 Ohio St. 2d 247, 71 O.O. 2d 226, 327 N.E. 2d 756, the court stated in its syllabus:

"An occupational disease is compensable under R.C. 4123.68(BB) where the following criteria exist: (1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in

character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."

There was testimony that Hoops did not previously have an asthmatic condition or bronchial problems, but that her symptoms became evident when she worked on the broach machine around the chemicals and fumes produced by them. There was additional testimony that these chemicals created fumes which irritated the lungs and bronchial tubes. Also, these chemical fumes which irritate the lungs could create a risk of contracting the disease in a greater degree and in a different manner than in the public generally.

In *Patterson* v. *Connor* (1984), 19 Ohio App. 3d 304, 19 OBR 476, 484 N.E. 2d 240, the court stated at 306, 19 OBR at 479, 484 N.E. 2d at 242, that when determining if the disease is peculiar to the claimant's employment it is not whether all employees were more susceptible to the disease than the public generally, "but rather whether the claimant, in his own particular daily activities, was more apt than the general public to become so afflicted."

In *Krise, supra,* at 250-251, 71 O.O. 2d at 228, 327 N.E. 2d at 759, the Supreme Court cited *LeLenko* v. *Wilson H. Lee Co.* (1942), 128 Conn. 499, 503, 24 A. 2d 253, 255-256:

" '* * * The phrase "peculiar to the occupation" is not here used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations * * *.' At page 504, the court explained the interpretation:

" ' We cannot import into the conception of occupational disease under our law the element that the disease must be a usual or generally recognized incident of the employment. *Compensation under our law is not to be denied because the injury would not have occurred except for the peculiar susceptibility of the individual worker.* * * * [Citations omitted.] Occupational diseases result ordinarily in incapacity in a relatively small proportion of the number of employees subjected to the risk; indeed, if this were not so, economic considerations would require an abandonment of the employment or a change in its conditions to obviate the risk. There is nothing in the terms of our statutory definition of an occupational disease which suggests that to fall within it a disease must be one which is a usual or generally recognized incident of the employment, and the considerations we have suggested preclude our finding that such a legislative intent is to be implied. * * *' " (Emphasis added.)

Upon a review of the entire record, we determine that the trial court committed reversible error as a matter of law. In *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467, the court stated at 284-285, 21 O.O. 3d at 179, 423 N.E. 2d at 469:

"The law in Ohio regarding directed verdicts is well formulated. In addition to Civ. R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. *Durham* v. *Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31. Thus 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. *Kellerman* v. *J.S. Durig Co.*

(1964), 176 Ohio St. 320 * * *.' *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, 115."

The plaintiff presented the testimony of three physicians concerning her medical history and present condition. There was testimony upon which reasonable minds could come to different conclusions. It was for the jury to determine the weight and credibility of these three physicians, and not the trial court. Therefore, the trial court abused its discretion in granting a directed verdict in favor of the defendants.

It will be noted that this court is aware that R.C. 4123.68(BB) has been deleted from the statute, but that the legislature has otherwise incorporated the test set forth in *State, ex rel. Ohio Bell Telephone Co.,* v. *Krise, supra,* to determine occupational diseases. Therefore, this change effective August 22, 1986 will not affect the disposition of the case at bar.

The appellant's sole assignment of error is well-taken.

*Judgment reversed and cause remanded.*

MILLER, P.J., and SHAW, J., concur.