**UPSHAW, Appellant,**

v.

**CENTRAL FOUNDRY DIVISION, GENERAL MOTORS
CORPORATION, et al., Appellees.**

[Cite as *Upshaw v. Cent. Foundry Div., Gen.
Motors Corp.* (1992), 82 Ohio App.3d 636.]

Court of Appeals of Ohio,
Defiance County.

No. 4–91–26.

Decided Sept. 29, 1992.

*Jeffrey Reed*, for appellant.

*Robert P. King*, for appellee.

*Lee Fisher*, Attorney General, and *Charles E. Bloom*, Assistant Attorney General, for appellee Administrator, Bureau of Workers' Compensation.

SHAW, Judge.

This is an appeal by the plaintiff-appellant, Shirley Upshaw, from a judgment of the Court of Common Pleas of Defiance County which granted judgment notwithstanding the verdict in favor of the defendant-appellee, Central Foundry Division, General Motors Corporation.

The plaintiff filed a claim for an occupational disease with the Bureau of Workers' Compensation. On October 11, 1989, the district hearing officer allowed her claim for right carpal tunnel syndrome. The defendant appealed to the Toledo Regional Board of Review, which affirmed the allowance of her claim on March 20, 1990. The defendant further appealed to the Industrial Commission of Ohio. Defendant's appeal was refused on June 14, 1990.

Pursuant to R.C. 4123.519, the defendant then appealed to the Court of Common Pleas of Defiance County. The plaintiff filed a petition with the court of common pleas, and the case proceeded to trial on August 22, 1991. A unanimous jury found that the plaintiff was entitled to participate in workers' compensation benefits.

After the jury trial, the defendant moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. On November 8, 1991, the common pleas court rendered judgment notwithstanding the jury verdict in favor of the defendant dismissing the plaintiff's claim of an occupational disease. The court also conditionally granted the defendant's motion for a new trial.

Plaintiff now appeals asserting the following assignment of error:

"The trial court committed error by granting defendant's motion for judgment notwithstanding the verdict and by granting the alternative relief of a new trial."

■ The plaintiff argues on appeal that the court should have denied the defendant's motion for judgment notwithstanding the verdict because she presented sufficient evidence to support her claim of an occupational disease under R.C. 4123.68. In *Phelps v. Horn's Crop Serv. Ctr.* (Oct. 18, 1990), Wyandot App. No. 16–89–8, unreported, 1990 WL 157282, we set forth the standard for reviewing the court's ruling on defendant's motion for judgment notwithstanding the verdict. Such a motion should be denied where there was substantial evidence to support the plaintiff's position upon which reasonable minds could differ. *Id.*, citing *Cardinal v. Family Foot Care Ctrs., Inc.* (1987), 40 Ohio App.3d 181, 183, 532 N.E.2d 162, 164.

In essence, the trial court's decision to grant the judgment notwithstanding the verdict was based upon the court's reconsideration of its own decision to

deny the defendant's motion for a directed verdict at trial. In its judgment entry, the trial court stated that:

"[I]t is apparent that this court erred as a matter of law in failing to grant the Defendant's motion for directed verdict. In construing all of the evidence most strongly in favor of Plaintiff, reasonable minds could only conclude that Plaintiff failed to meet her burden of proof as to these requirements for a non-scheduled occupational disease. Defendant is therefore entitled to have the verdict and judgment thereon set aside and to have judgment entered in its favor. The prohibition contained in Rule 50(B) against rendering judgment on the ground that the verdict is against the weight of evidence is not thereby violated, insofar as no evidence whatsoever was presented by Plaintiff on the codified elements of *Krise* * * * and Defendant was, upon its motion for directed verdict, and is, on its motion for judgment notwithstanding the verdict, entitled to judgment as a matter of law."

In *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, the Ohio Supreme Court set forth a tripartite test to be applied in order to determine whether an occupational disease claim is compensable. We note that *Krise* construed R.C. 4123.68(BB), which has been deleted from the statute. However, in our opinion, the legislature has incorporated the *Krise* requirements in the present version of R.C. 4123.68. *Hoops v. Mayfield* (1988), 44 Ohio App.3d 50, 53, 541 N.E.2d 113, 115.

The pertinent language of R.C. 4123.68 is as follows:

"[O]ccupational disease" means a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner than the public in general.

" * * *

"The following diseases shall be considered occupational diseases and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section. A disease which meets the definition of an occupational disease is compensable pursuant to Chapter 4123. of the Revised Code though it is not specifically listed in this section."

As the statute indicates, it contains a list of diseases which *per se* are considered to be occupational. However, right carpal tunnel syndrome is not a disease specifically enumerated in the statute. Thus, the definition of an "occupational disease" set forth in that statute is applicable in the instant

case. We look to the entire record in order to determine whether the plaintiff presented substantial evidence upon which reasonable minds could differ to meet that statutory definition.

In the case *sub judice*, the plaintiff testified on her own behalf and had the depositions of Dr. Carroll and Dr. Kane read to the jury. Plaintiff, who was thirty-seven years old at the time of trial, testified that she has been employed with the defendant for fourteen years. During her employment, plaintiff stated that she has worked various jobs, including light processor, heavy processor, core setter, grinder, and that she is currently working in production inspection.

In particular, plaintiff described her job as a grinder. Typically when working as a grinder, the plaintiff testified she would grind for eight hours using vibratory tools, namely, a hand grinder.

Plaintiff then described the hand grinder as a vibratory, air tool which she mostly held with her right hand. After the hand grinder would be on so long, she testified that the grinder would constantly shake. Plaintiff further testified that pain in her right hand would escalate to the point where she was hardly able to continue holding the grinder. By the end of the day, she would have a lot of pain in her right hand.

Plaintiff stated that she did not previously have any problems with her right hand, but that she started having pain in her right hand and wrist after she became a grinder. She further stated that her current job in production inspection does not involve "the same vibration at all that [she] had with the grinder."

The plaintiff presented Dr. Carroll's testimony next. After having performed the surgery, Dr. Carroll's medical opinion was that the plaintiff's symptoms of carpal tunnel syndrome were due to her work at the defendant's plant. In addition, Dr. Carroll stated that there is a causal link between the repetitive use of the wrist or the use of vibratory tools and carpal tunnel syndrome.

The plaintiff also presented the testimony of Dr. Kane. He likewise stated that there is a causal link between vibratory forces and carpal tunnel syndrome. Dr. Kane also stated that exposure to some of the physical stress, like continued vibratory force, may make it a greater risk for that person getting carpal tunnel syndrome.

In *Krise, supra*, 42 Ohio St.2d at 250–251, 71 O.O.2d at 227–228, 327 N.E.2d at 759, the Ohio Supreme Court quoted *LeLenko v. Wilson H. Lee Co.* (1942), 128 Conn. 499, 503, 24 A.2d 253, 255–256, stating in pertinent part:

"The phrase 'peculiar to the occupation' is not here used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations * * *.

"We cannot import into the conception of occupational disease under our law the element that the disease must be a usual or generally recognized incident of the employment. Compensation under our law is not to be denied because the injury would not have occurred except for the peculiar susceptibility of the individual worker. [Citations omitted.] Occupational diseases result ordinarily in incapacity in a relatively small proportion of the number of employees subjected to the risk; indeed, if this were not so, economic considerations would require an abandonment of the employment or a change in its conditions to obviate the risk. There is nothing in the terms of our statutory definition of an occupational disease which suggests that to fall within it a disease must be one which is a usual or generally recognized incident of the employment, and the considerations we have suggested preclude our finding that such a legislative intent is to be implied."

■ In light of the overall record, it is our opinion that the plaintiff has presented evidence indicating that she contracted right carpal tunnel syndrome in the course of her employment with the defendant, "which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally."

The plaintiff also produced evidence indicating that employment as a grinder could create a risk of contracting the disease of right carpal tunnel syndrome in a greater degree and in a different manner than in the public generally. As the court stated in *Patterson v. Connor* (1984), 19 Ohio App.3d 304, 307, 19 OBR 476, 479, 484 N.E.2d 240, 243:

"[W]hether a claimant's employment places her in a greater risk of contracting the disease in a greater degree and in a different manner than in the public generally, is based on the claimant's own particular kind of employment, not on employment of a similar nature generally."

Because there was substantial evidence upon which reasonable minds could differ, we believe the trial court's initial analysis of the evidence was correct when the motion for the directed verdict was denied at trial. Hence, we must reverse the court's subsequent judgment granting defendant's motion for judgment notwithstanding the verdict.

■ In her assignment of error, the plaintiff also asserts that the trial court erred by granting the alternative relief of a new trial. Pursuant to Civ.R. 50(C)(1), the trial court was directed to "rule on the motion for a new trial * * * by determining whether it should be granted if the judgment is thereafter vacated or reversed." Civ.R. 59, which governs the granting of a new trial, requires that the court specify in writing the grounds upon which such new trial is granted.

The defendant asserts various grounds in its brief upon which the court's decision to grant a new trial could have been based. However, upon reading the court's entry conditionally granting a new trial, we find that it does not clearly set forth the grounds in writing as required by Civ.R. 59. Apparently, the court's reasoning was that the plaintiff failed to present any evidence whatsoever on the elements set forth in *Krise, supra.* Thus, it follows that the ground upon which the trial court conditionally granted a new trial was that the judgment was not sustained by the weight of the evidence.

In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579, the Ohio Supreme Court set forth the standard to follow when deciding whether a judgment is against the manifest weight of the evidence. The well-established standard is that:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

In the case *sub judice*, we have already decided that there was substantial evidence presented at trial upon which reasonable minds could differ as to the elements of R.C. 4123.68. Civ.R. 50(C)(1) provides that "the new trial shall proceed unless the appellate court has otherwise ordered." Thus, pursuant to that statute, we also order that the court's conditional grant of a new trial be reversed.

Accordingly, the plaintiff's assignment of error is well taken and is sustained.

■ Although the defendant did not file a notice of appeal with this court, it asserts the following cross-assignments of error:

"I. The trial court erred in overruling Central Foundry's objection to the admission of evidence concerning the nerve conduction velocity test performed by Robert A. Gregg, M.D.

"II. The trial court erred in overruling Central Foundry's objection to the admissibility of Dr. Carroll's expert opinion and Central Foundry's motion for a directed verdict."

R.C. 2505.22 governs assignments of error filed on behalf of the appellee and states in pertinent part:

"[A]ssignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part."

As the Ohio Supreme Court stated in *Parton v. Weilnau* (1959), 169 Ohio St. 145, 171, 8 O.O.2d 134, 148, 158 N.E.2d 719, 736:

"[A]n assignment of error by an appellee, where such appellee has not filed any notice of appeal from the judgment of the lower court, may be used by the appellee as a shield to protect the judgment of the lower court * * *."

The defendant initially raised the two evidentiary objections set forth in its assignments of error during the deposition of Dr. Carroll. However, the record indicates that the defendant apparently failed to renew these objections at the time Dr. Carroll's deposition was read at trial. In Ohio, the general rule is that errors which are not preserved by objection at the trial are considered waived and may not be raised upon appeal. See *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630. In any event, it is clear that while Dr. Carroll's initial diagnosis of plaintiff may have been based in part on the nerve conduction test, the ultimate opinion introduced at trial was based primarily on Dr. Carroll's firsthand observation and performance of surgery upon plaintiff.

The defendant also failed to properly preserve its motion for a directed verdict. In *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, the Ohio Supreme Court reaffirmed its long-standing rule that a motion for a directed verdict which was denied at the close of plaintiff's case must be renewed at the close of the evidence in order to preserve the error for appeal. The record reveals that the defendant moved for a directed verdict at the close of plaintiff's case, which was denied by the trial court. However, the record indicates that the defendant did not renew its motion at the close of all the evidence. Nevertheless, it is obvious from our disposition of the plaintiff's assignment of error that we find no merit in defendant's cross-assignment regarding the directed verdict. As a result, we find it unnecessary to address further defendant's cross-assignments of error.

Accordingly, we reverse and remand this case to the trial court with instructions to reinstate the original judgment consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HADLEY and EVANS, JJ., concur.