[Cite as *Tharp v. Whirlpool*, 2018-Ohio-1344.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

ALYSSIA THARP,

    PLAINTIFF-APPELLANT,          CASE NO. 9-17-41

    v.

WHIRLPOOL CORPORATION, ET AL.,      O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 2016 CV 0334

**Judgment Reversed and Cause Remanded**

Date of Decision: April 9, 2018

APPEARANCES:

    *Joseph A. Fraley and Joshua M. Fraley* for Appellant

    *Mark S. Barnes* for Appellee, Whirlpool Corporation

**SHAW, J.**

{¶1} Plaintiff-appellant, Alyssia Tharp ("Tharp"), brings this appeal from the October 4, 2017, judgment of the Marion County Common Pleas Court dismissing her complaint related to workers' compensation against defendant-appellee, Whirlpool Corporation ("Whirlpool"), after the trial court granted Whirlpool summary judgment. On appeal, Tharp argues that the trial court erred by determining that a genuine issue of fact did not exist as to whether Tharp suffered her injury or disease in the course of and arising out of her employment with Whirlpool. She also argues that the trial court lacked authority to determine that Whirlpool was not the proper employer for her workers' compensation claim.

*Relevant Facts and Procedural History*

{¶2} On July 2, 2012, Tharp was hired by Kelly Services, Inc., a temporary service. Tharp was placed at Whirlpool as a temporary employee. While she was a temporary employee at Whirlpool, Tharp assembled dryers, "which involved manipulating dryer panels and other parts * * * using a screw gun to 'shoot screws' to secure parts on the dryer, 'rolling screws' which involved manipulating the screws with her fingers * * * and other repetitive activities with her right and left hands and wrists." (Doc. No. 6, Ex. A).

{¶3} On September 30, 2013, Tharp visited the plant's medical department to report numbness and tingling in both hands. She indicated that her job required

a lot of dragging and pushing, that the numbness was constant in her right wrist and that her left hand was numb when she worked. Tharp met with a nurse who noted no bruising or redness and also that Tharp could make a fist and extend her fingers.

{¶4} Tharp was told she would be treated conservatively. She was told to take Ibuprofen and ice her wrists as much as possible. She was also given medium-sized wrist splints. In addition, she was told that if the pain/numbness/tingling had not gone away to come back and see what could be done for her. In her deposition Tharp indicated that the nurse told her that she was only 21 years old and had not worked there that long so there was no way she had carpal tunnel. No diagnosis of any occupational disease was made at that time.[1]

{¶5} On February 21, 2014, Tharp was hired as a full-time employee by Whirlpool. Before being hired, Tharp was given a pre-employment physical. The physical included testing on Tharp's wrists and hands. Tharp had a "normal" Phalen's test, Tinel's test and Finklestein's test.

{¶6} Tharp next reported an issue on May 28, 2015, when she was a Whirlpool employee. Tharp again returned to Whirlpool's medical department and stated that she was having sharp pain in both wrists at a 4 or 5 out of 10 on a pain scale. Tharp indicated that for the last few months she had constant numbness and

---

[1] According to statements in the record, Tharp could not do her job with the wrist supports on so she wore them at home only, and she used Ibuprofen as she was directed until November of 2014 when she had an ulcer and had to discontinue its use.

tingling in her hands. Tharp was given various tests again and found to have a full range of motion in her wrists. It was indicated that Tharp had a "bilateral wrist strain" and that she should be rechecked in two weeks.

**{¶7}** After continued problems over the next couple of months Tharp was sent for EMG testing on July 1, 2015, and it was determined that she had, *inter alia*, bilateral carpal tunnel syndrome.

**{¶8}** On September 3, 2015, Tharp was evaluated by Dr. Lawrence Lubbers who placed her on a number of restrictions and diagnosed Tharp with bilateral flexor tenosynovitis and bilateral carpal tunnel syndrome.

**{¶9}** Tharp filed for workers' compensation with both Kelly Services and Whirlpool as she was not certain who the claim should go against. Tharp's claim against Whirlpool was heard by a District Hearing Officer and her claims for "bilateral flexor tenosynovitis and bilateral carpal tunnel syndrome" were allowed on February 17, 2016.

**{¶10}** The District Hearing Officer summarized his findings regarding the facts and history and concluded that "Whirlpool Corporation is the correct Employer in this claim, and * * * the Injured Worker has satisfied her burden of proving that the bilateral carpal tunnel syndrome and bilateral flexor tenosynovitis were sustained in the course of, and arising out of, her employment." (Doc. No. 6, Ex.

A). The District Hearing Officer determined that temporary total disability compensation was granted from September 18, 2015 to October 15, 2015.

{¶11} Whirlpool appealed the District Hearing Officer's decision and on April 4, 2016, the Staff Hearing Officer affirmed the District Hearing Officer's determination allowing Tharp's claim. The Staff Hearing Officer did make one alteration, changing the date of diagnosis to July 1, 2015, the date which EMG testing confirmed the diagnosis of bilateral carpal tunnel syndrome.

{¶12} In making its ruling, the Staff Hearing Officer conducted the following analysis.

> **The Staff Hearing Officer notes that while the Injured Worker had symptoms in her wrist initially on 9/30/13, there was no diagnosis made of the requested conditions at that time, and the Injured Worker was performing a different job process at that time (dragging and pushing). The injured worker is now claiming that shooting screws with a screw gun while working at whirlpool is what caused her bilateral carpal tunnel syndrome, which was not officially diagnosed until 2015. Given this fact, as well as the negative pre-employment testing Whirlpool is the proper employer.**

(Doc. No. 6, Ex. B).

{¶13} Whirlpool appealed the determination of the Staff Hearing Officer and that appeal was denied by the Industrial Commission on April 28, 2016.

{¶14} For reference, Tharp's claim against Kelly Services was disallowed as no medical condition was diagnosed until 2015. (Doc. No. 27, Ex. F).

{¶15} On June 24, 2016, Whirlpool filed a notice of appeal from the decision of the Staff Hearing Officer to the Marion County Common Pleas Court.

{¶16} On September 20, 2016, Tharp filed a complaint against Whirlpool in the Marion County Common Pleas Court. She alleged that she suffered an injury or occupational disease in the course of and arising out of her employment with Whirlpool as a result of repetitive work duties which involved, *inter alia*, shooting screws with a screw gun.[2]

{¶17} On October 6, 2016, Whirlpool filed an answer disputing Tharp's claims.

{¶18} On July 11, 2017, Whirlpool filed a motion for summary judgment contending that even assuming Tharp had contracted carpal tunnel from work-related activities, she actually contracted it during her employment with Kelly Services, not with Whirlpool. To support its position, Whirlpool attached several exhibits to its motion, including Tharp's medical records. Whirlpool also included the copies of "First Report of an Injury" ("FROI") forms that had been filed related to Tharp's injury. One FROI form was filed regarding Kelly Services and one was filed regarding Whirlpool. Both indicated that the employer was notified July 28, 2015, and both indicated that the date of injury/disease was "9/30/2013."

---

[2] Tharp also joined the Bureau of Workers' Compensation to the action. The BWC filed an answer indicating that Whirlpool was a self-insured employer. As to this appeal, the BWC continued to maintain it had little interest in the matter.

{¶19} On August 9, 2017, Tharp filed a response to Whirlpool's motion for summary judgment contending that while Tharp had some early issues with her hands while employed by Kelly, her problems did not develop into a carpal tunnel syndrome diagnosis until she was employed by Whirlpool, which was undisputed in the record. Tharp also argued that the filing of the summary judgment motion by Whirlpool was frivolous and thus Tharp should be awarded attorney's fees for having to defend against it. On August 24, 2017, Whirlpool filed a reply.

{¶20} On October 4, 2017, the trial court filed its judgment on the matter. Ultimately the trial court ruled in favor of Whirlpool finding that there was "no dispute that the date of occupational disease of [Tharp] was September 30, 2013, and it [was] undisputed that [Tharp] was employed by Kelly Services" and not Whirlpool, at that time. (Doc. No. 46). The trial court dismissed Tharp's complaint and entered judgment in favor of Whirlpool.

{¶21} It is from this judgment that Tharp appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in granting summary judgment to Defendant-Appellee Whirlpool Corporation as the trial court did not have the proper jurisdiction [to] decide whether Defendant-Appellee Whirlpool was the proper employer in this Workers' Compensation employer appeal.**

**Assignment of Error No. 2**
**The trial court erred in granting summary judgment to Defendant-Appellee Whirlpool as there remain genuine issues of**

**material fact as to whether Plaintiff-Appellant suffered a work injury in the course of and arising out of her employment with Defendant-Appellee Whirlpool.**

{¶22} We elect to address the assignments of error out of the order in which they were raised.

Standard of Review

{¶23} We review a trial court's decision on a motion for summary judgment *de novo*. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this Court conducts an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 3d Dist. Hancock No. 5-16-01, 2017-Ohio-258, ¶ 16, citing *Brown v. Cty. Commrs. of Scioto Cty.,* 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted).

{¶24} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial

court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 10th Dist. Franklin No. 15AP-32, 2015-Ohio-4462, ¶ 11, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Dresher* at 293.

*Second Assignment of Error*

{¶25} In Tharp's second assignment of error, she argues that the trial court erred in finding that there was not a genuine issue of material fact as to whether Tharp suffered a workplace injury or contracted an occupational disease while at Whirlpool.

{¶26} In order to participate in the workers' compensation system, a claimant must have been injured at work or have contracted an occupational disease through her employment. *Stoneman v. Zimmer Orthopaedic Surgical Products, Inc.,* 5th Dist. Nos.2007 AP 08 0046, 2007 AP 08 0045, 2008–Ohio–5241, ¶ 160. Tharp does not appear to argue that her carpal tunnel syndrome or her bilateral flexor tenosynovitis is a result of a specific injury; rather she seems to contend that it was an occupational disease she contracted through her employment.

{¶27} Revised Code 4123.01(F) defines "occupational disease" as

**a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition**

**of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general.**

Carpal tunnel has essentially been recognized as a compensable occupational disease so long as it has been appropriately tied to the employer. *See Steele v. Crawford Machine, Inc.*, 3d Dist. Crawford No. 3-08-29, 184 Ohio App.3d 45, 2009-Ohio-2306; *Prejean v. Euclid Bd. Of Educ.*, 8th Dist. Cuyahoga No. 70905-70908, 119 Ohio App.3d 793 (1997); *Upshaw v. Cent. Foundry Div. Gen. Motors Corp.*, 3d Dist Defiance No. 4-91-26, 82 Ohio App.3d 636 (1992).

**{¶28}** As for when Tharp could bring a claim for an occupational disease, the Supreme Court of Ohio has determined that "Pursuant to R.C. 4123.85[3], disability due to an occupational disease shall be deemed to have begun on the date on which the claimant first became aware through medical diagnosis that he or she was suffering from such disease, or the date on which claimant first received medical treatment for such disease, or the date claimant first quit work on account

---

[3]Revised Code 4123.85 specifically reads:

> **In all cases of occupational disease, or death resulting from occupational disease, claims for compensation or benefits are forever barred unless, within two years after the disability due to the disease began, or within such longer period as does not exceed six months after diagnosis of the occupational disease by a licensed physician or within two years after death occurs, application is made to the industrial commission or the bureau of workers' compensation or to the employer if he is a self-insuring employer.**

of such disease, *whichever date is the latest*." (Emphasis added.) *White v. Mayfield*, 37 Ohio St.3d 11 (1988).

{¶29} In this case, the trial court found that the "critical date of [Tharp's] claim is September 30, 2013, which [Tharp] listed as the date of occupational disease." (Doc. No. 46). The trial court further found that there was "no dispute that the date of occupational disease of [Tharp] was September 30, 2013, and it is undisputed that [Tharp] was employed by Kelly Services [at that time], and not by Defendant Whirlpool." (*Id.*)

{¶30} Contrary to the findings of the trial court, there is no indication in the record whatsoever that Tharp actually had carpal tunnel syndrome or bilateral flexor tenosynovitis while she worked for Kelly Services. Tharp did initially visit the medical staff for having problems with her hands on September 30, 2013, but no diagnosis was made at this time. There is no indication that Tharp ever again sought any treatment while being employed by Kelly Services.

{¶31} In fact, Tharp underwent a physical in January of 2014, before she was hired as a full-time employee by Whirlpool, and during that physical her hands and wrists were tested. There is no indication in the record that Tharp had carpal tunnel or bilateral flexor tenosynovitis at *that* time even though she was being tested for Whirlpool. Similarly, there is no indication in the record that Whirlpool had

concerns regarding Tharp's health or concerns that Tharp was having trouble with her hands and wrists.

{¶32} The record affirmatively indicates that Tharp was placed on certain work restrictions during 2015 when she was employed by Whirlpool as a result of problems with her hands. Tharp was then tested and found to have carpal tunnel syndrome and bilateral flexor tenosynovitis while she was an employee of Whirlpool in July of 2015. These issues would seem to demonstrate *at least* a genuine issue of material fact as to whether Tharp contracted an occupational disease while at Whirlpool rather than Kelly Services.[4]

{¶33} The trial court found that no genuine issue of material fact was present here on the basis of the FROI forms that had been allegedly filled out by Tharp. The FROI forms both indicated that the "date of injury/disease" was "September 30, 2013." The trial court found that since Tharp had filled out these forms (or her attorneys had), she was essentially admitting that the date of her occupational disease was September 30, 2013, and not, as the Staff Hearing Officer found, in July of 2015 when her diagnosis was made.[5]

---

[4] The record is at least unclear as to the differences between job duties and line requirements for Tharp between the two employers. Tharp worked on "line 3" for some time while employed by Kelly Services and she indicated in her deposition that she worked on "line 4" with Whirlpool. Tharp indicated in her deposition that it was a couple of months to a year of working on line 4 before her hands started to go numb. The Staff Hearing Officer noted that in her earlier work on "line 3" Tharp was doing more "dragging and pushing" whereas in the later work with Whirlpool she shot screws with a screw gun. There is some indication from testimony that the work on the lines was similar and that Tharp also worked as a floater at times.

[5] The copy of Tharp's FROI form related to Kelly Services that is included in the record was unsigned by her.

-12-

{¶34} Notably, Tharp filed the FROI related to both Kelly Services and Whirlpool because at the time she was unsure which employer was appropriate. Her claim against Kelly Services was disallowed as Whirlpool was found to be the proper employer due to the diagnosis, and thus the disability, occurring in 2015. Whirlpool was found to be the proper employer because Tharp was not diagnosed with carpal tunnel syndrome until it was confirmed by an EMG test on July 1, 2015.

{¶35} The trial court sought to rigidly hold Tharp to her own rough estimation of when the injury/disease began when there was medical evidence diagnosing her at a later date. Based on the evidence in the record we cannot say that, when viewing the evidence in the light most favorable to Tharp, there is no genuine issue of material fact here. The evidence is, at the very least, in dispute on this topic. Therefore, Tharp's second assignment of error is sustained.

*First Assignment of Error*

{¶36} In Tharp's first assignment of error, she argues that the trial court did not have "the proper jurisdiction" to make a determination as to who the proper employer was in regards to Tharp's claim. Tharp's argument under this assignment is not entirely clear, as she seems to concede that the trial court had jurisdiction to determine her ability to participate in the workers' compensation fund, and that the trial court had jurisdiction to consider the summary judgment motion, but she argues that the trial court "lacked jurisdiction" to make a specific finding regarding when

Tharp's occupational disease began. Tharp argues that the trial court could not determine that the disease began before her employment with Whirlpool because that would alter the employer responsible, which she contends was essentially beyond the trial court's authority in this case. Tharp argues that the *only* question the trial court could consider was Tharp's ability to participate in the fund.

{¶37} Contrary to Tharp's argument, if the trial court did not have authority to determine when the occupational disease began, then the trial court would essentially not be able to determine Tharp's ability to participate in the Workers' Compensation Fund. Here, the trial court made its determination as to when it felt the occupational disease began, entering a summary judgment on that conclusion. In the previous assignment of error we found the summary judgment to be in error based on the presence of a genuine issue of material fact in the record as to when the occupational disease began. We do not find that the case authority cited by Tharp supports reversal on any other issue in this case, or that the trial court somehow "lacked jurisdiction" to determine Tharp's ability to participate in the fund. Therefore, Tharp's first assignment of error is overruled.

*Conclusion*

{¶38} For the foregoing reasons Tharp's first assignment of error is overruled, her second assignment of error is sustained and the judgment of the

Marion County Common Pleas Court reversed.  This cause is remanded to the trial court for further proceedings consistent with this opinion.

***Judgment Reversed and*
*Cause Remanded***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**