HOLLOWAY, Appellant,

v.

ADMINISTRATOR OF WORKERS' COMPENSATION et al., Appellees.

[Cite as *Holloway v. Ohio Bur. of Workers' Comp.* (1998), 126 Ohio App.3d 814.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-961038.

Decided March 27, 1998.

*Kondritzer, Gold, Frank & Crowley Co., L.P.A.*, and *Lane N. Cohen*, for appellant.

*Steven P. Fixler*, for appellees Administrator of Workers' Compensation and Industrial Commission of Ohio.

*Per Curiam.*

The plaintiff-appellant, Cheri Holloway, appeals from the order of the trial court granting the defendants-appellees' motion for involuntary dismissal of her claim for workers' compensation based upon an orthopedic problem identified as "overuse syndrome." Holloway asserted below that the syndrome was an unscheduled compensable occupational disease under R.C. 4123.68. In her single assignment of error, she now alleges that the trial court erred by granting the defendants-appellees' motion for dismissal. We agree and thus reverse.[1]

---

1. We have *sua sponte* removed this case from the accelerated calendar.

Holloway worked in food services at Mallard Cove Retirement Community. Her job duties required her to climb stairs and walk from one of the five buildings to the next. She testified that at her peak she worked seventy to eighty hours per week, and that almost all of the work required her to be on her feet. She stated that she spent the majority of time on the bottom floor of the fourth building, where the kitchen and dining room were located. According to Holloway, the kitchen had originally been a storage room and the floor was concrete covered with tile. The dining-room floor, she testified, was covered with unpadded carpet.

Holloway started working at Mallard Cove in December 1992. By May 1993, she had begun to experience problems with pain and tightening in her right thigh and knee. Eventually, she testified, her knee began to lock. She stated that the problems would subside when she stopped working for several days. According to Holloway, the problems with her right leg persisted for a period of two years until she left Mallard Cove in April 1995.

While suffering problems with her right leg, Holloway consulted a chiropractor, Dr. Mary J. Glass. Dr. Glass diagnosed "internal derangement of the right knee, contracture of the hamstring, hip/thigh strain, right SI [sacroiliac] tendonitis." Asked her opinion as to the cause of Holloway's diagnosed condition, Glass stated that Holloway's "work-related activities such as standing and walking" had produced "continued microtrauma to the knee, which, in turn, caused contracture of the hamstring into the thigh and into the SI area." Glass also testified that, based upon Holloway's job description, she considered Holloway to be at a greater risk for her type of injury than another individual working in a different capacity. Glass stated further that she also treated Holloway for left leg and knee problems, which could have resulted from Holloway using her left leg more prominently to compensate for the pain in her right. Upon cross-examination, Glass conceded that she did not originally treat Holloway's complaints as work-related; she explained, however, that this was prior to arriving at a diagnosis and before noting the pattern of Holloway's complaints.

Dr. Carla Ross, who specializes in occupational medicine, examined Holloway on March 14, 1996, and March 28, 1996. Dr. Ross diagnosed Holloway as having "overuse syndrome of the right lower extremity," and further concluded that this condition was caused by the "long hours of work, walking and standing on concrete floors" in her work at the retirement community. She also stated that Holloway was put at greater risk for her type of injury than an employee who was not required to work sixty hours per week and walk extensively on a concrete floor covered with tile. Upon cross-examination, Ross conceded that work is not the only way to develop leg or knee problems, and that sometimes such problems are sports-related or related to nonoccupational overuse. She testified, however, that she did not consider Holloway's problems related to any

activity in which she may have engaged in the past, such as roller-skating, jogging, or water-skiing.

Dr. David C. Randolph, a physician board-certified in occupational medicine, examined Holloway on March 30, 1995. He testified that he could not find an objective basis for Holloway's complaints on physical examination. He stated further that he could not find any evidence of a contracture of the hamstring, or a hip or thigh strain. He stated that "there's no such thing" as SI tendonitis as diagnosed by Dr. Glass. Randolph further stated that in his opinion there was no relationship between Holloway's subjective complaints and her job-related activities. He gave his explanation as follows:

"Well, as I said, even if we allow that these [symptoms] exist, there has to be an injury. Something had to have happened to cause this. There is nothing that existed here—there is no history of injury. Some of those other documents that we referenced earlier continuously describe the onset of her symptoms with no injury. There is no description of an injury, nothing happened, she just started having pain. This is—it's absurd under the circumstances to say that just because she has pain that it's related to her job. It's equally as absurd to say the rooster crows, the sun comes up, and there's a cause and effect relationship; it doesn't exist."

Randolph further testified that there was no evidence of overuse syndrome. He stated: "If one presumes that these symptoms have occurred as a consequence of prolonged standing, walking or prolonged activity of the lower extremities, then, why is it that there's no involvement of the left leg? That makes no sense." Upon cross-examination, he allowed that if Holloway had suffered "bilateral pain in both knees," then his opinion on causality may have been different.

A trial court's decision to grant judgment for the defendant pursuant to Civ.R. 41(B)(2) will not be set aside so long as it is not erroneous as a matter of law or against the manifest weight of the evidence. *First Natl. Bank v. Cianelli* (1991), 73 Ohio App.3d 781, 788, 598 N.E.2d 789, 794. In considering a motion for involuntary dismissal under the rule, a court may weigh the evidence, resolve conflicts, and grant judgment for the defendant only if the plaintiff has failed to show any right to relief. *Faber v. Queen City Terminals, Inc.* (1994), 93 Ohio App.3d 197, 201, 638 N.E.2d 115, 118.

Interpreting the statutory predecessor of current R.C. 4123.68, the Ohio Supreme Court in *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, set forth the following criteria for a nonscheduled occupational disease:

"An occupational disease is compensable under R.C. 4123.68(BB) where the following criteria exist: (1) the disease is contracted in the course of employment;

(2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally." *Id.* at syllabus.

■ In announcing its decision to grant the defendants-appellees' motion for involuntary dismissal, the trial court made the following remarks:

"And the Court has weighed, and the Court is having trouble and fails to find that the conditions of Ms. Holloway's employment resulted in a hazard which distinguishes her employment from employment, in general, walking issues.

"I think that I have a hard time finding that walking is a condition that resulted in a hazard, which distinguishes her employment in character from employment in general.

"And I have difficulty finding that Ms. Holloway's employment at [Mallard Cove] created a risk of contracting whatever this occupational disease is in a greater degree and a different manner than the public, in general. I just can't find those things to be present in this case. And consequently, I feel I must grant the motion under Rule 41(B)(2) and dismiss this case."

The trial court later gave as a reason for its decision the fact that "concrete sidewalks are all over the place, concrete floors in any office building, concrete floors everyplace; streets, and sidewalks, and so forth."

We hold this reasoning to be erroneous as a matter of law. Specifically, we hold that the trial court incorrectly applied the second and third prongs of *Krise* when it identified as the distinguishing condition of her employment only the fact that she was required to walk on concrete. That reasoning completely ignores the repetitive nature of the work and its strain on the human body. Clearly it was not only the fact that Holloway's job required her to walk on concrete, but that it required her to do so extensively, for sometimes sixty to eighty hours per week, that allegedly distinguished her employment and put her at greater risk for overuse syndrome.

Holloway's two medical experts, Drs. Glass and Ross, both testified that Holloway's having to work long hours on tiled concrete and unpadded carpet put her at greater risk of contracting overuse syndrome than employment that did not require her to do so. Holloway testified that in her experience in other food-service jobs most floors were cushioned in some manner. Two other employees of the retirement community testified that they, too, had experienced leg problems similar to Holloway's.

Given the expert and lay testimony, we hold that Holloway presented sufficient evidence to satisfy the second and third criteria of *Krise,* and that the trial court

erred in its consideration of this evidence because it failed to grasp that the distinguishing characteristic of Holloway's employment was not only that she was required to walk over concrete, but that she was required to do so repeatedly and for long hours.

We also reject the defendants-appellees' argument that the record is devoid of any evidence relevant to the third criterion, that Holloway's work exposed her to a risk different from that of the public generally. The gist of the defendants-appellees' position appears to be that the third criterion requires separate expert testimony establishing that claimant's occupation statistically produces a greater incidence of the disease—in this case overuse syndrome—than is experienced by the public generally. See *Burch v. Uniroyal Goodrich Tire Co.* (Dec. 1, 1993), Summit App. No. 16169, unreported, 1993 WL 498177. It is doubtful, however, whether any valid scientific study has ever been done—or will ever be done—to compare the incidence of overuse syndrome among employees required to work on hard floors with the incidence among those who are not.

To satisfy the third criterion of *Krise*, it was necessary for Holloway to show only that she had a greater risk of contracting overuse syndrome in a different manner than did the public generally. *State ex rel. Republic Steel Corp. v. Indus. Comm.* (1980), 61 Ohio St.2d 193, 196, 15 O.O.3d 216, 218, 399 N.E.2d 1268, 1269–1270. There is no requirement of statistical proof. See *Patterson v. Connor* (1984), 19 Ohio App.3d 304, 19 OBR 476, 484 N.E.2d 240. The Ohio Supreme Court has made clear that reviewing courts are to be mindful of the requirement in R.C. 4123.95 to construe the workers' compensation statutes liberally in favor of employees. *Bedford Hts. v. France* (1993), 67 Ohio St.3d 55, 58, 616 N.E.2d 177, 179–180. In this spirit, we hold that the third criterion can be satisfied inferentially from the expert and lay testimony of record here. Obviously a member of the general public who suffers pain from repetitive movement has the luxury of stopping and doing something else, whereas an employee whose job requires such movement does not. It does not require expert testimony to conclude that the employee is at greater risk.

We hold, therefore, that the trial court's application of the second and third criteria of *Krise* was erroneous as a matter of law. It is clear that, because of its error, the trial court did not proceed to weigh the medical evidence of record, which is conflicting on the issue of causality. As noted, although both Dr. Glass and Dr. Ross concluded that Holloway's overuse syndrome arose out of the peculiar characteristics of her employment, Dr. Randolph disputed both the diagnosis and the cause. The resolution of that conflict is for the trier of fact.[2]

---

2. We do note, however, that Randolph's opinion appears to hinge largely on the lack of any history of pain in the left leg, whereas Glass testified that she treated Holloway for compensatory pain in that limb as well.

Accordingly, we sustain Holloway's assignment of error challenging the trial court's order granting the defendants-appellees' motion for involuntary dismissal. The judgment of the trial court is reversed, and this cause remanded for further proceedings consistent with the law set forth herein.

*Judgment reversed*
*and cause remanded.*

PAINTER, P.J., GORMAN and SUNDERMANN, JJ., concur.