**GRESHAM, Appellee,**

v.

**GENERAL MOTORS CORPORATION, INLAND DIVISION, Appellant, et al.**

[Cite as *Gresham v. General Motors Corp., Inland Div.* (1990), 66 Ohio App.3d 837.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56960.

Decided July 2, 1990.

*Mark S. Fishman; Anthony J. Celebrezze, Jr.,* Attorney General, and *Q.A. Corsi,* Assistant Attorney General, for appellee.

*Thomas M. Carolin,* for appellant.

---

KRUPANSKY, Presiding Judge.

Defendant,[1] General Motors Corporation, Inland Division, filed a notice of appeal in the Cuyahoga County Common Pleas Court, case No. 140953, appealing a decision of the Ohio Industrial Commission which awarded workers' compensation benefits to plaintiff, Ceressia Gresham. The case was tried

---

1. James L. Mayfield, Administrator of the Bureau of Workers' Compensation, was also a defendant in the case at the trial court.

without a jury. On November 25, 1988, judgment was entered in favor of plaintiff. Defendant filed a timely notice of appeal.

On January 18, 1989 the trial judge filed findings of fact which held as follows:

"1. The plaintiff, Ceressia Gresham worked full-time as a seamstress at General Motors for approximately 11 years and, before that, as a part-time industrial seamstress for approximately twenty years. The work at General Motors, in particular, involved operating and feeding material into a power sewing machine.

"2. Mrs. Gresham's function did not involve pushing needles by hand through materials but involved grasping materials, feeding them in various ways through a power sewing machine, and cutting the materials with scissors of one sort or another. These are functions that constantly, repetitively, and in varying degrees involve pressure on the fingers and wrist. Some of the pressure is quite heavy, depending upon the type of material, such as vinyl or leather. Other parts of the work were less heavy, especially if one were handling cloth.

"3. The exertion in the job not only required substantial strength and pressure but also was done under a production schedule which required Mrs. Gresham to work brisk [sic] and at [sic] steady pace for a normal factory workday.

"4. Plaintiff, at all times relevant to her claim, has suffered from carpal tunnel syndrome.

"5. Carpal tunnel syndrome is caused by a compression in certain nerve passageways of the wrist and hand. If such compression occurs, symptoms known as carpal tunnel syndrome can result. Carpal tunnel syndrome is manifested, in part, through sharp pains in the affected hands.

"6. That kind of compression resulting in carpal tunnel syndrome is known to occur in people who have to function as industrial seamstresses. Thus, carpal tunnel syndrome is an occupational disease of individuals who work as industrial sewers.

"7. The sole cause of the carpal tunnel syndrome experienced by Mrs. Gresham was her work as a seamstress. Although there is evidence that she may have had a susceptibility to carpal tunnel syndrome as a result of having had a hysterectomy, there is no persuasive evidence that her hysterectomy caused the carpal tunnel syndrome."

Defendant's assignments of error follow:

"The trial court erred in entering judgment for the plaintiff-appellee as there was insufficient evidence to establish that she contracted bilateral carpal

tunnel syndrome in the course of her employment with defendant-appellant; that bilateral carpal tunnel syndrome is peculiar to her employment by is [*sic*] causes and the characteristics of its manifestation, or alternatively, that the conditions of employment result in a hazard which distinguished this employment in character from employment generally; and that her employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally.

"The trial court erred in entering judgment for the plaintiff-appellee in that there was no evidence that the carpal tunnel syndrome resulted from the activities which she alleged had caused the disease."

Defendant's assignments of error lack merit.

Defendant contends the court erred in applying the test for awarding workers' compensation benefits. Specifically, defendant argues insufficient evidence was introduced to prove a relationship existed between bilateral carpal tunnel syndrome and the job classification of plaintiff at the time her symptoms arose. Appellant further argues that plaintiff's previous job classifications which may in fact have led to the onset of the disease should not have been considered by the trial court because plaintiff was alleging the disease began with her present classification. Defendant's arguments are unpersuasive.

"An occupational disease is compensable under R.C. 4123.68(BB) where the following criteria exist: (1) the disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally." *State, ex rel. Ohio Bell Tel. Co., v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, syllabus.

R.C. 4123.68 [2] provides in pertinent part as follows:

"Every employee who is disabled because of the contraction of an occupational disease as defined in this section, or the dependent of an employee whose death is caused by an occupational disease as defined in this section, is entitled to the compensation provided by sections 4123.55 to 4123.59 and 4123.66 of the Revised Code subject to the modifications relating to occupational diseases contained in Chapter 4123. of the Revised Code.

---

**2.** R.C. 4123.68 has been amended since this case's inception; however, the wording quoted governs the case *sub judice.*

"The following diseases shall be considered occupational diseases and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section.

## "SCHEDULE

" * * *

"(BB) All other occupational diseases: A disease peculiar to a particular industrial process, trade, or occupation and to which an employee is not ordinarily subjected or exposed outside of or away from his employment."

In the case *sub judice*, the employer's own medical expert, Dr. Allen Rollins, testified at deposition as follows:

"Q. Okay. Just as a matter of clarification, if you could read to the ladies and gentlemen of the jury the sentence on page three of your report, which starts accordingly? That would be five lines from the end.

"A. Yeah, there was a causal relation—

"MR. GREINER: Objection.[3]

"Q. If you could just read the sentence.

"A. 'Accordingly, based on the history and medical records, it is my opinion that there was a causal relationship between the bilateral carpal tunnel syndrome and her employment at the General Motors Plant.'

"Q. Has that opinion changed since September of 1988?

"A. No. She—it is—her work there probably significantly contributed to it.

"Q. Okay. Did it cause it, Doctor?

"A. Well, there are many causal factors and that's certainly one of the causal factors *and in her case probably the major causal factor.*" (Emphasis added.)

Dr. Rollins further testified as follows:

"Q. Doctor, would you relate to us the history which Ms. Gresham gave you at the time of your examination?

"A. I was shocked kind of that she hadn't experienced symptoms of carpal tunnel for some time; because when we read the textbooks, we find that the

---

3. The objection was overruled at trial.

work of a seamstress does require a lot of hand and wrist motion and she had done that basically all of her working life."

Dr. Philbert Jones testified at deposition on behalf of plaintiff as follows:

"Q. What is your opinion, Doctor?

"A. The opinion is that I think this condition was caused by the patient's employment as a sewing machine operator, doing repetitive types of strenuous activity with her hands."

Dr. Jones further testified as follows:

"Q. So then this condition, in your opinion, would not have developed from a two week period of time performing a job.

"A. A two week period of time?

"Q. Yes.

"A. No, it would not have."

Dr. Jones again reiterated his testimony as follows:

"Q. Doctor, again you stated that Ms. Gresham's condition was, at the time you saw her, more of a longstanding duration, correct? It had developed over a period of time.

"A. Yes."

Finally, Dr. Jones concluded as follows:

"Q. Once again, Doctor, this just being, trying to clarify something, this is not a condition, then, that developed in February of 1986. It was a condition that developed over time?

"A. Yes, the evidence from the EMG and nerve conduction study, I feel, tells us that this had developed over a period of time. In order to get the kind of objective findings that were indicated."

The burden of initially demonstrating the cause of the disease was on the plaintiff. Once she had met her burden, it is incumbent on defendant to introduce some rebuttal evidence. Although other potential causes of the disease exist, defendant has failed to introduce any evidence that these potential other factors caused plaintiff's condition.

As to defendant's contention that plaintiff complained that her present job classification was the cause of the disease when it may have begun in a previous classification, thereby precluding relief, we find that position to be untenable. Obviously, plaintiff could not complain she suffered from the disease until the symptom's manifestation became apparent in plaintiff.

Plaintiff cannot be required to know the medical cause of her disease. Medical expert testimony is necessary to establish causal relation between the medical phenomenon and the occupation. Plaintiff could only, and did only, testify when the symptoms became apparent. Any other conclusion would force potential recipients of workers' compensation benefits to be medical experts.

Plaintiff had been hired by General Motors as a power machine operator. Her duties included those of an industrial seamstress, *viz.*, seaming, tacking down and finishing upholstery. Her work on the "joining and lace job" was but one more sub-classification within the classification of power machine operator. Both plaintiff's and defendant's doctors' testimony agree essentially that the occurrence of February 2, 1986, when claimant was assigned to the "joining and lace job," was not the sole cause of claimant's bilateral carpal tunnel syndrome but only the time when the symptoms manifested themselves. Both doctors agree that the bilateral carpal tunnel syndrome was of long standing. The doctors also agreed that employment as a seamstress commonly results in developing this disease.

The testimony of both doctors was in agreement as to each part of the tripartite test set out in *Krise, supra.* Therefore, the court did not err in sustaining the decision of the Ohio Industrial Commission.

Accordingly, defendant's assignments of error are not well taken and overruled.

*Judgment affirmed.*

MATIA and HOFSTETTER, JJ., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.