OPINION
This timely appeal arises from a jury verdict finding that Appellee was entitled to participate in the benefits of the Bureau of Workers' Compensation Fund. Appellants challenge the jury verdict by arguing that Appellee failed to establish a causal connection between his alleged occupational injury and his employment with Appellant. For all of the following reasons, this Court affirms the judgment of the trial court.
Richard J. Carrera, ("Appellee") began working for Becdir Construction Co., ("Appellant") in the fall of 1991 doing heavy highway construction work. Appellee remained employed by Appellant until December of 1995. During the period of his employment with Appellant, Appellee worked as a carpenter, operated a jackhammer and built forms into which concrete was poured to build roads and bridges. There were long periods of time in which Appellee's duties required that his arms be held over his head, including overheard hammering, nailing and drilling. (Transcript. pp. 42-44, 86).
In 1993, Appellee began suffering severe pain in his right arm. His arm would also become cold, discolored, and numb. In February of 1994, Appellee passed out from the pain in his arm while he was operating a company owned truck: (Transcript, p. 96). He was taken to St. Elizabeth's Hospital in Youngstown, Ohio, and was subsequently diagnosed as suffering from right venous thoracic outlet syndrome, or more specifically, intermittent partial subclavian vein obstruction. (Transcript, p. 251). This medical condition involved blockage of the major vein in Appellee's right arm. The blockage was the result of scarring of the vein due to repeated trauma to the vein at the point where it passed through Appellee's upper chest. Subsequent medical tests revealed that Appellee was born with an unusually narrow channel from which this vein enters the chest.
Appellee consulted with several physicians in Ohio and had a number of surgical procedures to relieve the pressure on the vein before finally being referred to a specialist in thoracic outlet syndrome, Dr. Richard Sanders, in Denver, Colorado. Appellee was still employed with Appellant during these medical consultations. Dr. Sanders confirmed that the major vein in Appellee's right arm passed through an unusually small passageway in Appellee's chest. He further determined that repeated use of his arms over his head caused thickening and scarring of the vein as a result of this vein being constantly pushed against the bones and ligaments in that narrow passageway. Dr. Sanders performed five separate surgical procedures before he was successful in relieving the pressure and clearing the blockage.
In 1994, Appellee filed a workers' compensation claim which was denied by the Industrial Commission of Ohio on April 10, 1995. On May 22, 1995, Appellee filed an administrative appeal with the Mahoning County Court of Common Pleas pursuant to R.C. § 4123.512. Appellee demanded a jury trial and named Appellant and the Administrator of the Bureau of Workers' Compensation as defendants. On June 6, 1997, Appellant moved for summary judgment which the trial court denied on July 7, 1997. Trial commenced on May 26, 1998, and resulted in a jury verdict in favor of Appellee. On June 10, 1998, Appellant filed a Civ.R. 50 (B) Motion for Judgment Notwithstanding the Verdict. The trial court overruled this motion by way of a November 2, 1998, Judgment Entry.
On November 24, 1998, Appellant filed this timely appeal which was given appellate case number 98-CA-223. On December 1, 1998 the Administrator of the Bureau of Workers' Compensation, also an Appellant herein, filed its appeal which was given appellate case number 98-CA-228. On December 28, 1998, this Court consolidated both appeals under appellate case number 98-CA-223. In that regard, Appellants have filed a joint brief asserting the following three assignments of error:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT BECDIR CONSTRUCTION COMPANY'S MOTION FOR SUMMARY JUDGMENT INASMUCH AS APPELLEE FAILED TO ESTABLISH THAT HE CONTRACTED THE DISEASE OF RIGHT VENOUS THORACIC OUTLET SYNDROME IN THE COURSE OF HIS EMPLOYMENT WITH APPELLANT BECDIR CONSTRUCTION COMPANY."
 "THE TRIAL COURT ERRED IN DENYING APPELLANT BECDIR CONSTRUCTION COMPANY AND APPELLANT BUREAU OF WORKERS' COMPENSATION MOTIONS FOR DIRECTED VERDICT INASMUCH AS APPELLEE FAILED TO ESTABLISH THAT HE CONTRACTED THE DISEASE OF RIGHT VENOUS THORACIC OUTLET SYNDROME IN THE COURSE OF HIS EMPLOYMENT WITH APPELLANT BECDIR CONSTRUCTION COMPANY."
 "THE TRIAL COURT ERRED IN DENYING APPELLANT BECDIR CONSTRUCTION COMPANY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT INASMUCH AS APPELLEE FAILED TO ESTABLISH THAT HE CONTRACTED THE DISEASE OF RIGHT VENOUS THORACIC OUTLET SYNDROME IN THE COURSE OF HIS EMPLOYMENT WITH APPELLANT BECDIR CONSTRUCTION COMPANY."
In the realm of workers' compensation law, certain occupational diseases are enumerated in a schedule found in R.C. § 4123.68. These diseases are deemed compensable if the claimant proves that the disease was contracted in the course of employment. Appellee's alleged problem is not a "scheduled" occupational disease. As such, according to R.C. § 4123.01 (F) Appellee had the burden to establish by a preponderance of the evidence that he:
 ""1) Contracted the alleged disease in the course of his named employment; 2) The disease by its causes and the characteristics of its manifestation or the condition of the named employment result in a hazard which distinguishes the named employment in character from employment generally; and 3) The named employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general."
State ex rel. Ohio Bell Tel. Co. v. Krise (1975), 42 Ohio St.2d 247, syllabus.
As is evident from the joint assignments of error, Appellants contend that Appellee failed to provide sufficient evidence to satisfy the first of the three prongs cited above. As this issue was raised at different points in the procedural history of this case and thus implicates different standards of review, they shall be addressed separately.
A. Summary Judgment
When reviewing a trial court's granting of summary judgment, we review the evidence de novo and apply the same standard used by the trial court. Varisco v. Varisco (1993),91 Ohio App.3d 542, 543, citing Parenti v. Goodyear Tire RubberCo. (1990), 66 Ohio App.3d 826, 829; Bell v. Horton (1996),113 Ohio App.3d 363, 365. Summary judgment under Civ.R. 56 is only proper when the movant demonstrates that:
 "(1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346. These factors make it clear that summary judgment should be granted with caution, being careful to resolve doubts in favor of the nonmoving party. Id.
The party seeking summary judgment has the initial burden of informing the court of the motion's basis and identifying those portions of the record showing that there are no genuine issues of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must be able to point to some evidence of the type listed in Civ.R. 56 (C) that affirmatively demonstrates that the nonmoving party has no evidence to support its claim.Id. If this initial burden is met, the nonmoving party has a reciprocal burden to, set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not respond, summary judgment, if appropriate, shall be granted." Id.
In support of its motion for summary judgment, Appellant, Becdir, cited to the deposition testimony of Appellee's expert and treating surgeon, Dr. Richard J. Sanders. In his deposition, Dr. Sanders' testified in relevant part:
 "Q: So you are not saying here today that [Appellee's] venous obstruction was contracted as a result of approximately 81 weeks of work at Becdir Construction [Appellant], correct?
 "A: That's correct. I don't know which part of his work history we could relate this to.
(Dr. Sanders, Deposition Transcript, pp. 50-51)
Having met their evidentiary burden in support of summary judgment, the burden shifted to Appellee to demonstrate that there was a genuine dispute of material fact. To meet this burden, Appellee cited to the same deposition testimony. Specifically, Appellee drew the trial court's attention to the following dialogue:
 "Q: Okay. First of all, doctor, do you believe that [Appellee] contracted a disease in the course of his employment described as intermittent partial subclavian vein obstruction?
"* * * *
 "A: To a reasonable degree of certainty, I believe he did contract this in the course of his employment."
(Dr. Sander's Deposition, Transcript, p. 31)
These two quoted passages from Dr. Sander's deposition reveal the existence of discrepancies in the doctor's medical opinion regarding causation. These discrepancies indicate the existence of a dispute as to a material issue in this matter, thereby making summary judgment inappropriate. Thus, the trial court properly denied Appellant's motion for summary judgment and Appellant's first assignment of error is hereby overruled.
B. Motion for Directed Verdict and Motion for JudgmentNotwithstanding the Verdict.
In their second and third assignments of error, Appellants challenge the trial court's denial of their motions for a directed verdict and motions for judgment notwithstanding the verdict. These motions were based on the same grounds asserted in the first assignment of error. This Court will address both of these assignments of error together as the legal test on review of both motions is the same. Osler v. Lorain (1986),28 Ohio St.3d 345, 347. When reviewing the trial court's ruling on either of these motions we must test, de novo, the legal sufficiency of the evidence before the trial court, not the weight or the credibility to be given that evidence. Id; Boewev. Ford Motor Co. (1992), 94 Ohio App.3d 270, 280; Byrley v.Nationwide Life Ins. Co. (1997), 118 Ohio App.3d 39. The evidence contained in the record must be construed most strongly in favor of the party against whom the motion is made, and where there is competent evidence supporting the nonmovant's claim such that reasonable minds might reach different conclusions, the motion must be denied. Osler, supra; Ramage v. Cent. OhioEmergency Serv. Inc. (1992), 64 Ohio St.3d 97, 109.
The evidence adduced at trial indicates that Appellee worked exclusively for Appellant, Becdir Construction, from 1991 through 1993. Appellee's expert, Dr. Sanders, testified in relevant part as follows:
 "Q: During any time between `91 and `93, are you able to tell me that he actually contracted or developed the venous thoracic outlet syndrome?
"* * * *
 "A: Yes. I would say, until he developed symptoms, he could not have been diagnosed as having venous obstruction. The onset of the pain and swelling in his arm is what established the diagnoses. So that diagnosis was established as of — by the basis of his history as of November 1993."
(Dr. Sanders, Transcript, P. 281)
While this Court is mindful that there is no individual statement by Dr. Sanders that Appellee contracted his disease as a result of employment with Appellant, the combined effect of his and Appellee's testimony provides substantial evidence for this very proposition. Dr. Sanders testified that the onset of Appellee's symptoms coincided with the onset of the disease. (Transcript, pp. 264, 281). He also testified that Appellee developed the symptoms in November of 1993, in the course of his employment, but without specifying who the employer was. (Transcript, pp. 252, 282). Furthermore, Appellee testified that in 1993, he did not work for anyone other than Appellant, Becdir Construction. (Transcript, p. 84). Thus, in combination this testimony is sufficient to support the conclusion that Appellee contracted the disease in November of 1993 while working for his only employer, Becdir Construction.
While Appellants strenuously argue that Dr. Sanders contradicted himself throughout his testimony, these alleged contradictions raise issues of credibility. Credibility is in the exclusive province of the trier of fact, in this case the jury. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80. Simply put, the jury resolved any inherent contradictions within Dr. Sanders' testimony and found Dr. Sanders to be more credible than the Appellants' expert. This Court will not disturb that finding.
Viewing the evidence in the light most favorable to Appellee, there was sufficient evidence to support the element of causation necessary to Appellee's case. As such, we are unable to say that reasonable minds could come to but one conclusion and that this conclusion is adverse to Appellee's position. The trial court properly denied Appellants' motions for directed verdict and motions for judgment notwithstanding the verdict. Appellants' second and third assignments of error are overruled.
For all of the foregoing reasons, each of Appellants' assignments of error are overruled and the judgment of the Mahoning County Court of Common Pleas is hereby affirmed.
Cox, P.J., concurs, Donofrio, J., concurs.
APPROVED:
 _____________________ CHERY L. WAITE, JUDGE