DECISION ON OBJECTION TO MAGISTRATE'S DECISION
{¶ 1} Relator, Nick Meris, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order finding it had continuing jurisdiction to hear a request for reconsideration from an order that granted relator permanent total disability compensation. In reconsidering its order, the commission required relator to submit to new medical examinations and then denied him permanent total disability compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded the commission incorrectly determined a clear mistake of fact occurred that would support the commission's exercising its continuing jurisdiction. Instead, "this magistrate concludes that whether or not the physicians knew that relator had been working with his family transporting fish from New York a few times as work activity would go to the weight and credibility of their reports when viewed by the commission. This magistrate concludes that the medical reports initially relied upon by the [staff hearing officer] were not rendered fatally defective and the [staff hearing officer's] reliance upon them did not constitute grounds for the commission to exercise continuing jurisdiction pursuant to R.C. 4123.52." (Magistrate's Decision, at ¶ 37.) Accordingly, the magistrate determined the requested writ should be granted.
 {¶ 3} Respondent Industrial Commission has filed an objection to the magistrate's decision that states:
The magistrate erred in her recommendation to grant a writ of mandamus based upon her determination that the Industrial Commission could not exert continuing jurisdiction in the present case.
 {¶ 4} R.C. 4123.52 grants the commission continuing jurisdiction over each case, and a "clear mistake of fact" is a proper basis for the commission's exercising that jurisdiction. According to the commission, the record supports a clear mistake of fact in this instance, as "Meris' involvement selling fish also had a physical activity implication that was essential for the medical examiners to consider in order to determine Meris' level of impairment." (Objections, at 3.)
 {¶ 5} In State ex rel. Beal v. Indus. Comm. (Dec. 12, 1996), Franklin App. No. 95APD10-1267 (Memorandum Decision), affirmed consistent with the court of appeals (1998),83 Ohio St.3d 116, this court considered similar circumstances in that Beal apparently failed to tell the examining doctor he had been working, and the doctor, in the absence of that information, determined Beal should be considered permanently and totally disabled. The commission found Beal permanently and totally disabled, but then exercised continuing jurisdiction when it learned of Beal's work involvement. In mandamus review, this court concluded the commission properly exercised its continuing jurisdiction. See, also, State ex rel. Volvo GM Heavy TruckCorp. v. Indus. Comm. (Aug. 17, 1993), Franklin App. No. 92AP-917 (concluding that "[t]hese falsehoods involved issues so fundamental to the physician's opinion that the resulting medical opinion is of no value in establishing that [claimant] is entitled to temporary total disability compensation").
 {¶ 6} Similarly, relator's work activity here is fundamental to the issue of whether relator is capable of sustained remunerative employment, and relator's failure to convey that information to the doctor renders the doctor's report fundamentally flawed. Accordingly, the commission properly exercised continuing jurisdiction in concluding a clear mistake of fact had occurred. The commission's objection is sustained.
 {¶ 7} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts. We, however, disagree with the magistrate's conclusions of law and do not adopt them, except for ¶ 39-42. Instead, for the reasons set forth in this decision, as well as ¶ 39-42 of the magistrate's conclusions of law, we deny the requested writ of mandamus.
Objection sustained;
 writ denied.
 PETREE and KLATT, JJ., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Nick Meris, : Relator, : v. : No. 03AP-810 The Industrial Commission of Ohio: (REGULAR CALENDAR) and Bsp Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 20, 2004 Heller, Maas, Moro Magill Co., L.P.A., and Robert J.Foley, Jr., for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 8} Relator, Nick Meris, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders finding that it had continuing jurisdiction to hear a request for reconsideration from an order granting relator permanent total disability ("PTD") compensation requiring him to submit to new medical examinations following the first hearing on his application for PTD compensation, and then issuing an order denying him PTD compensation.
Findings of Fact:
 {¶ 9} 1. Relator, whose date of birth is March 11, 1960, immigrated to the United States from Greece in 1987.
 {¶ 10} 2. Relator first secured work as a laborer and then, in 1994, relator began his employment as a painter, painting bridges and towers, for respondent Bsp Inc. ("employer").
 {¶ 11} 3. On June 19, 1994, relator suffered serious injuries and his workers' compensation claim has been allowed for:
* * * Open fracture right femoral shaft. Open comminuted fracture right patella. Closed fracture left 1st metacarpal (bennett's fracture). Concussion. Laceration right eyebrow. Laceration right side head. Fracture zygoma right side. Laceration supraorbital nerve. Fracture teeth. Chondro-malacia right patella. Prolonged post traumatic stress dis-order. Neurotic depression.
 {¶ 12} 4. Relator began receiving temporary total disability ("TTD") compensation following his work-related injury.
 {¶ 13} 5. On April 30, 1999, the Ohio Bureau of Workers' Compensation ("BWC") filed a request for reconsideration of relator's TTD award based upon the allegation that relator had been operating a fish retail business while receiving TTD compensation from December 17, 1996 through December 21, 1998.
 {¶ 14} 6. By order dated June 29, 1999, a district hearing officer ("DHO") concluded that relator had been engaged in sustained remunerative employment while receiving TTD compensation and ordered a recoupment of compensation paid from December 17, 1996 through December 21, 1998. Ultimately, on reconsideration, the commission determined that there was clear and convincing evidence of fraud requiring the termination of relator's TTD compensation.
 {¶ 15} 7. On June 22, 2001, relator filed an application for PTD compensation. On his application, relator indicated that he had completed the 12th grade in Greece, stated that he did not read or write well but that he could perform basic math well. Relator listed his prior work experience as a laborer in the construction industry and as a painter.
 {¶ 16} 8. In support of his application, relator submitted the May 9, 2001 report of Dr. Demetrios E. Lagoutaris who had been treating relator for his allowed psychological conditions. Dr. Lagoutaris noted that relator was easily frustrated, that his coping skills made him unable to handle even minor stress, pressures or responsibilities, that he became irritable, unreasonable, and easily frustrated with his children, that he has a tendency to have limited hope in the future and is confused about life, and that he would present a risk to himself and others if he were to return to any type of gainful employment. Based upon the allowed psychological conditions, Dr. Lagoutaris opined that relator was permanently and totally disabled.
 {¶ 17} 9. Relator also submitted the May 21, 2002 report of Dr. Michael A. Frangopoulos who examined relator with regard to his allowed physical conditions. Dr. Frangopoulos indicated that, due to his allowed conditions, relator is unable to bend, squat, crawl or climb secondary to his right leg injuries; is unable to use his right foot for any repetitive movements, and is unable to sit, stand or walk for any significant amount of time. Dr. Frangopoulos completed a physical capacity evaluation wherein he noted that relator could sit, stand, and walk each for less than one hour at a time during the course of an eight hour day; could occasionally lift and carry up to ten pounds but could not lift or carry above ten pounds; could use both his right and left hands for simple grasping and fine manipulation but could use neither hand for pushing or pulling; was precluded from using either foot for repetitive movement such as pushing or pulling leg controls; could not bend, squat, crawl, climb or reach, but could frequently flex or rotate his neck; could handle market changes in temperature humidity as well as exposure to dust, fumes, and gases; was mildly restricted regarding driving automotive equipment; and could not be around unprotected heights and could not be around moving machinery.
 {¶ 18} 10. A psycho-educational evaluation was performed by Erica E. Brown, M.S.ed., L.P.C.C., who issued a report dated June 1, 2001. Ms. Brown conducted several evaluations and concluded as follows: relator's intelligence falls within the borderline range; relator's skills fall below average in reading decoding, spelling, reading comprehension, computational math, and written expression; that relator does not appear to be an appropriate candidate for additional education in part due to his difficulty with the English language, but that remedial assistance to strengthen his expressive and receptive English skills would be beneficial; and that relator's difficulties with written expression would interfere with his performance on any job that required record keeping or reading and math beyond a very basic level.
 {¶ 19} 11. The record also contains the September 11, 2001 report of Dr. Bashiruddin Usama, a commission specialist. Dr. Usama's examination was an oral and maxiofacial surgery exam. Dr. Usama indicated that relator had reached maximum medical improvement ("MMI") and assessed a zero percent whole person impairment.
 {¶ 20} 12. A psychological assessment was performed by Steven B. Van Auken, a psychologist, who issued a report dated September 13, 2001. Dr. Van Auken examined relator with regard to his allowed psychological conditions and opined that relator had reached MMI, that he was moderately impaired regarding activities of daily living, social functioning, concentration, persistence, and pace, and adaptation to changing life circumstances. Dr. Van Auken noted that relator could neither return to his former position of employment, nor could he perform other sustained remunerative employment.
 {¶ 21} 13. Relator's application was heard before a staff hearing officer ("SHO") on December 12, 2001, and resulted in an order granting the request for PTD compensation based upon the medical reports of Drs. Lagoutaris, Frangopoulos, and Van Auken. As such, PTD compensation was granted based solely upon the allowed physical conditions without consideration of the vocational factors.
 {¶ 22} 14. On January 2, 2003, the BWC filed a request for reconsideration on the basis that the SHO had granted PTD compensation based upon a defective and fraudulent IC-2 which failed to list relator's most recent employment selling fish, and that the medical evidence relied upon was incompetent because the doctors were not aware that relator had been employed.
 {¶ 23} 15. By order dated May 30, 2002, the commission invoked its continuing jurisdiction for the following reason:
* * * The Industrial Commission further finds there is a clear mistake of fact in the Staff Hearing Officer order of 12/12/2001, of such character that remedial action would clearly follow. The clear mistake of fact in the Staff Hearing Officer order of 12/12/2001, is the medical reports that relied upon in granting permanent and total disability compensation, were written by specialists who did not consider the injured worker's physical and psychological capabilities as demon-strate[d] by the complete past vocational history. More specifically, the specialists did not consider the injured worker's past work history of operating a fish selling business in making their evaluations on permanent and total disability.
The Staff Hearing Officer's order of 12/12/2002 awarded permanent and total disability compensation based on the reports of Steven Van Auken, Ph.D., dated 09/13/2001 and 09/26/2001, Dr. Demetrios Lagoutaris, dated 05/09/2001 and 10/29/2001 and Dr. Michael Frangopoulos, dated 05/21/2002. The reports of Dr. Lagoutaris and Dr. Frangopoulos do not mention the previous work of the injured worker as a fish salesman from approximately 1996 to 1998. The report from Dr. Van Auken mentions that the injured worker was supplementing his income by bringing fish in from other states and selling them in his hometown and that the Bureau of Workers' Compensation brought charges against him. However, the previous section of Dr. Van Auken's report under" occupation history" does not mention the prior fish merchandising business and indicated that he had only worked in the painting business. This report is inconsistent regarding the injured worker's vocational history.
Therefore, it is the finding of the Industrial Commission that the Staff Hearing Officer order of 12/12/2002 is vacated and the injured worker is referred to the Industrial Commission Medical Section to schedule new specialist's examination with a new employability assessment to follow these examinations. The specialists are to be advised as to the injured worker's complete prior vocational history, including his work as a painter and in the fish merchandising business. Once complete, the claim shall be reset before an [sic] Staff Hearing Officer on the question of the injured worker's Permanent and Total Disability Application, filed 06/22/2001.
 {¶ 24} 16. The commission vacated the previous SHO order granting PTD compensation, ordered new medical and vocational examinations, and referred the matter back to an SHO.
 {¶ 25} 17. Relator was examined by Robert L. Byrnes, Ph.D., for his allowed psychological conditions. Dr. Byrnes opined that relator had a 40 percent whole person impairment which would preclude him from returning to any of his former positions of employment. However, Dr. Byrnes concluded that relator could return to other sustained remunerative employment and noted:
* * * He could probably work in non-stressful positions, without many interpersonal demands for which he is otherwise qualified. The stress of legal problems (not his injury) appears to have increased his anger, suspicion and social withdrawal making finding work less likely.
 {¶ 26} 18. Relator was examined by Dr. Karen Gade who issued a report dated October 8, 2002, and opined that relator had reached MMI, assessed a six percent whole person impairment, and concluded that relator was capable of sedentary activity provided that he be allowed to move about.
 {¶ 27} 19. An employability assessment report was prepared by Alfred C. Walker, MS, CVE, ABVE, dated November 27, 2002. Mr. Walker listed several jobs which relator could perform based upon the medical reports of Drs. Gade and Byrnes, concluded that relator's age would not be a barrier to re-employment, that his education would be a moderately limiting factor, and that he is mildly limited considering his past work experience.
 {¶ 28} 20. The application was reheard before an SHO on February 7, 2003, and resulted in an order denying PTD compensation based upon the reports of Drs. Gade, Byrnes, Usama, Tzagournis, and the vocational report of Mr. Walker. The SHO concluded that relator retained the ability to perform sedentary work activity and that his nonmedical factors favored re-employability. (The commission's order can be found at pages 122 through 125 for the court's review.)
 {¶ 29} 21. Relator's motion for reconsideration was denied by order mailed April 11, 2003.
 {¶ 30} 22. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 32} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 33} For the reasons that follow, this magistrate concludes that relator is entitled to a writ of mandamus.
 {¶ 34} R.C. 4123.52 provides:
The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modifica-tion or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. * * *
 {¶ 35} In State ex rel. B C Machine Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 538, 541-542, the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:
R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, e.g., State ex rel. Gatlin v. Yellow FreightSystem, Inc. (1985), 18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State exrel. Cuyahoga Hts. Bd. of Edn. v. Johnston (1979),58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer v. Indus.Comm. (1980), 62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State exrel. Kilgore v. Indus. Comm. (1930), 123 Ohio St. 164 * * * (commission has continuing jurisdiction in cases involving fraud); State ex rel. Manns v. Indus. Comm. (1988),39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and State ex rel.Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85 * * * (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. * * *
 {¶ 36} In concluding that it had continuing jurisdiction to hear the BWC's request for reconsideration, the commission cited only one reason: a clear mistake of fact in that the SHO relied upon medical reports which were written by specialists who did not consider relator's physical and psychological capabilities as demonstrated by a complete past vocational history; more specifically, the specialists did not consider relator's past work history of operating a fish selling business in making their evaluations regarding whether he was permanently and totally disabled.
 {¶ 37} This magistrate disagrees with the commission's conclusion that this was a clear mistake of fact. Instead, this magistrate concludes that whether or not the physicians knew that relator had been working with his family transporting fish from New York a few times as work activity would go to the weight and credibility of their reports when viewed by the commission. This magistrate concludes that the medical reports initially relied upon by the SHO were not rendered fatally defective and the SHO's reliance upon them did not constitute grounds for the commission to exercise continuing jurisdiction pursuant to R.C. 4123.52. Instead, the magistrate notes that medical examiners are required to address the issue of a claimant's physical and/or psychological impairments which were caused by the conditions allowed in the particular claim. Medical examiners are not to include a discussion of the disability factors when rendering an opinion relative to impairment. As the court explained inStephenson, doctors' reports relied upon by the commission address the claimant's percentage of physical impairment of function. While doctors regularly us the words "disability" and "impairment" interchangeably, reference to the claimant's physical impairment is generally intended. "`[I]mpairment' is the amount of a claimant's anatomical and/or mental loss of function and is to be determined by the doctors and set forth within the medical reports," while "`disability' is the effect that the physical impairment has on the claimant's ability to work, which is to be determined by the Industrial Commission and its hearing officers." Id. at 171. While doctors' reports regularly indicate their opinions concerning whether a claimant could perform their prior employment functions, or any employment function, their conclusions go beyond the question of impairment and "transcend into the job market-disability issue." Id. However, it remains:
* * * [T]he ultimate authority and duty of the commission to determine the totality and permanency of the allowed injury. The commission is not required to accept the factual findings stated in a medical report at face value and, without questioning such, adopt the conclusions as those of the commission. This court, inState ex rel. Teece, v. Indus. Comm. (1981),68 Ohio St.2d 165, * * * stated that to do so would be tantamount to allowing a physician to determine disability rather than the commission. Questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers. See, generally, State, ex rel. Ohio Bell Telephone., v. Krise
(1975), 42 Ohio St.2d 247 * * *.
 {¶ 38} Medical examiners do not address the Stephenson
factors and skills developed by a claimant through their employment history. Instead, this evaluation is left to the expertise of the commission itself. PTD compensation was originally granted based solely on the medical evidence and without consideration of the vocational factors. The fact that the medical doctors were unaware of relator's involvement selling fish did not render their medical opinions and objective findings invalid. As such, this magistrate concludes that the commission did not have grounds to exercise its continuing jurisdiction and would grant relator's request for a writ of mandamus ordering the commission to reinstate the December 12, 2001 SHO order awarding him PTD compensation. However, in the event that the court would disagree with me on this issue, I will address relator's other two issues.
 {¶ 39} If this court determines that the commission did have continuing jurisdiction to grant reconsideration following the December 12, 2001 order of the SHO granting relator PTD compensation, then the commission did have jurisdiction to order new medical exams pursuant to the Ohio Revised Code and Ohio Administrative Code.
 {¶ 40} First, R.C. 4123.53 provides that:
The administrator of workers' compensation or the industrial commission may require an employee claiming the right to receive compensation to submit to a medical examination, vocational evaluation, or vocational questionnaire at any time, and from time to time, at a place reasonably convenient for the employee, and as provided by the rules of the commission or the administrator of workers' compensation.
 {¶ 41} Furthermore, Ohio Adm. Code 4121-3-34(C)(9) states that "[a]fter the pre-hearing conference, unless authorized by thehearing administrator, no additional evidence on the issue of permanent and total disability shall be submitted to the claim file." (Emphasis added.) As such, this magistrate finds that additional medical evidence was authorized by the BWC and the commission and that such was permissible under the law. As such, in the event that the court addresses this issue, relator's argument would fail.
 {¶ 42} Lastly, in the event that the court concludes that the commission did properly exercise its continuing jurisdiction and was authorized to order relator to submit to additional medical examinations, this magistrate would conclude that the commission did not abuse its discretion in then denying his application for PTD compensation. Contrary to relator's assertions, there is vocational evidence in the record indicating that relator would be capable of performing some sustained remunerative employment. Specifically, when considering relator's activities of buying and selling fish with and for his family, and the medical evidence that he could perform sedentary work, as well as his young age, his competency at math, and the vocational report prepared by Mr. Walker, there would potentially be a number of unskilled, entry-level jobs which relator could perform. As such, in the event that this court finds that the commission did properly exercise its continuing jurisdiction, then relator would not be entitled to a writ of mandamus.
 {¶ 43} Based on the foregoing, it is this magistrate's decision that the commission did not articulate a proper reason for exercising its continuing jurisdiction inasmuch as the doctors, whose medical reports the commission initially relied upon in granting relator PTD compensation, were not required to discuss and address and consider relator's past employment and were only required to give their opinions with regard to his impairment due to the allowed conditions and indicate any restrictions. As such, this magistrate concludes that there was no clear mistake of fact in the prior commission order granting PTD compensation, that the medical reports of Drs. Lagoutaris and Frangopoulous did constitute some evidence upon which the commission could rely and that it was the responsibility of the commission to take relator's past work history into account in determining whether he was entitled to PTD compensation. As such, this magistrate would grant relator's request for a writ of mandamus and order the commission to reinstate its December 12, 2001 order granting him PTD compensation. In the event that the court disagrees with the magistrate on this issue, the February 7, 2003 order denying relator's application would stand as the commission was authorized to order relator to submit to additional medical examinations, as the order is supported by some evidence, and provides the appropriate explanation for the denial of the award.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE