[Cite as *O'Neal v. Sanchez*, 2024-Ohio-5982.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

JEROME O'NEAL,

    PLAINTIFF-APPELLANT,

  v.

TRACIE J. SANCHEZ, ET AL.,

    DEFENDANT-APPELLEE.

CASE NO. 1-24-36

O P I N I O N

**Appeal from Allen County Common Pleas Court**
**CV 2023 0235Trial Court No. 2005-DR-351**

**Judgment Affirmed**

**Date of Decision: December 23, 2024**

**APPEARANCES:**

    *Terrence G. Stolly* **for Appellant**

    *Michael J. Tremoulis* **for Appellee**

**WALDICK, J.**

{¶1} Plaintiff-appellant, Jerome O'Neal ("O'Neal"), appeals the May 1, 2024 judgment of the Allen County Common Pleas Court dismissing his complaint against defendants-appellees, Tracie Sanchez ("Sanchez") and Andrew Fields ("Fields"), after the trial court granted summary judgment in favor of Sanchez and Fields. On appeal, O'Neal argues that the trial court erred in determining that no genuine issue of material fact existed as to O'Neal's claims of breach of fiduciary duty, conversion, and fraud. For the reasons that follow, we affirm the trial court's judgment.

*Background*

{¶2} In October of 2020, O'Neal, Sanchez, Fields, and Bradley Beining ("Beining"), formed CDC Investment Partnership LLC ("the Company"). The Company's general purpose was to own and manage real estate.

{¶3} When the Company was formed, the four members signed an "Operating Agreement" that specifically divided the members' ownership interest in *pro rata* "units" based on the members' initial capital contributions.[1] One-thousand ownership units were issued. Sanchez contributed $180,958 and received 366 units for 36.6% ownership; Fields contributed $150,000 and received 304 units

---

[1] "Capital Contribution" was defined in the "Operating Agreement" as "the total amount of cash and the fair market value of any other assets contributed (or deemed contributed under Regulation Section 1.704-1(b)(2)(iv)(d)) to the Company by a Member, net of liabilities assumed or to which the assets are subject."

for 30.4% ownership; Beining contributed $100,000 and received 202 units for 20.2% ownership; and O'Neal contributed $63,440 and received 128 units for 12.8% ownership.

{¶4} It is undisputed that in December of 2021, the Company redeemed Beining's units, leaving 798 outstanding units of ownership between Sanchez, Fields, and O'Neal. After the redemption, the parties' ownership units remained the same but their ownership percentages increased since Beining was no longer involved. Sanchez's 366 units amounted to 45.86% ownership; Fields's 304 units amounted to 38.1% ownership; and O'Neal's 128 units amounted to 16.04% ownership.

{¶5} The Company itself wholly owned three subsidiary limited liability companies: Lima Social House, Central Zone, and CDC Real Estate Holding. The Social House had a liquor license but no other assets or operations. Central Zone had no assets or operations. CDC Real Estate owned six parcels of real estate—three parcels were vacant lots and three parcels had buildings on them. One of the parcels was leased to The Lima Area Chamber Foundation. Another property was in the process of being renovated.

{¶6} Since the Company's inception, the record reflects that there has never been a distribution from the Company or its subsidiaries to any member. However, the members have paid for Company expenses out of their own funds. Sanchez

claimed that she had paid $865,161 in Company expenses.[2] O'Neal claimed that he had contributed more than $300,000 to the Company.

{¶7} Separate from the Company and the Operating Agreement, Sanchez contracted to employ O'Neal as an independent contractor to perform services for the Company and/or its subsidiary companies. O'Neal was to be paid $75,000 over a 14 month period, in weekly installments of $1,250. Sanchez claimed that she paid O'Neal $278,092.31 for services he performed and for reimbursement of expenses O'Neal incurred related to the Company.

{¶8} Prior to this lawsuit being filed, O'Neal spoke with Sanchez and Fields about his ownership percentage in the Company. O'Neal believed that since the Company's inception, it was intended that he receive a greater share of ownership. He was particularly concerned with his ownership percentage based upon the money he had put into the Company along with his work in increasing the Company's value. O'Neal was involved in securing a significant grant for the Company.

{¶9} The parties had a meeting where they discussed the possibility of O'Neal purchasing 170 more units in the Company, which would increase O'Neal's percentage of ownership. There was an indication that the price O'Neal would have to pay would be offset by the amount that the company owed O'Neal for

---

[2] Sanchez indicated that the amount she spent was separate from her initial capital contribution.

reimbursement. However, the parties never came to an agreement regarding O'Neal purchasing more shares or having a greater percentage of ownership.

{¶10} On August 1, 2023, O'Neal filed a lawsuit against Sanchez and Fields, asserting causes of action for: 1) breach of fiduciary duty, 2) conversion, 3) fraud, 4) the imposition of a constructive trust, 5) an accounting, and 6) intentional infliction of emotional distress. Notably, O'Neal did not sue the Company itself. O'Neal claimed, *inter alia*, that since the Company's inception there was an unwritten understanding that he would receive a greater percentage of ownership. He claimed that he had contributed "far more to the Company than his ownership percentage would indicate." (Doc. No. 1). O'Neal also alleged that "on numerous occasions, [Sanchez] represented to O'Neal that she would ensure that O'Neal's ownership percentage would be increased to an amount commensurate with his contributions to the company." (*Id.*) Further, O'Neal argued that Sanchez had "taken control of the grant" he acquired for the Company and that she was not using the grant properly. (*Id.*)

{¶11} On September 6, 2023, Sanchez and Fields filed motions to dismiss the complaint, which O'Neal opposed. On September 20, 2023, the trial court filed a judgment entry dismissing O'Neal's fourth and fifth causes of action on the basis that there is no such thing as a "cause of action" for the imposition of a constructive trust or for an accounting, as both of those are equitable remedies; however, the trial

court ordered that those requests would remain as prayers for relief. The trial court overruled the motions to dismiss in all other respects.

{¶12} The case then proceeded through discovery. After O'Neal was deposed, Sanchez and Fields filed motions for summary judgment on all of O'Neal's remaining causes of action. On April 29, 2024, O'Neal filed memorandums in opposition to the motions for summary judgment.

{¶13} On May 1, 2024, the trial court filed a thorough final judgment entry analyzing the issues and ultimately granting the motions for summary judgment filed by Sanchez and Fields on all issues. O'Neal's complaint was then dismissed.

{¶14} O'Neal now brings the instant appeal from the trail court's judgment, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court erred in granting Appellee Tracie J. Sanchez's and Appellee Andrew Fields' motions for summary judgment with respect to O'Neal's cause of action for breach of fiduciary duty by failing to draw all reasonable inferences in favor of O'Neal.**

**Second Assignment of Error**

**The trial court erred in granting Appellees' motions for summary judgment with respect to O'Neal's cause of action for conversion by failing to draw all reasonable inferences in favor of O'Neal.**

**Third Assignment of Error**

**The trial court erred in granting Appellees' motions for summary judgment with respect to O'Neal's cause of action for fraud by failing to draw all reasonable inferences in favor of O'Neal.**

{¶15} All three of O'Neal's assignments of error challenge the trial court's decision to grant summary judgment in favor of Sanchez and Fields. Thus the same standard of review is applicable for all three assignments of error.

*Standard of Review*

{¶16} Appellate courts conduct a de novo review of trial court decisions granting a motion for summary judgment. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this Court must conduct an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Tharp v. Whirlpool Corp.*, 2018-Ohio-1344, ¶ 23 (3d Dist.).

Civ.R. 56(C) provides, in relevant part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶17} "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." *Lundeen v. Graff*, 2015–Ohio–4462, ¶ 11 (10th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "Once the

moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial." *Id.*, citing *Dresher* at 293.

**{¶18}** "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 (1992). "Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of [his] claim." *Id.*, citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108 (1991), paragraph three of the syllabus.

*First Assignment of Error*

**{¶19}** In his first assignment of error, O'Neal asserts that the trial court erred in granting summary judgment in favor of Sanchez and Fields on his claim for breach of a fiduciary duty.

**{¶20}** The elements for a breach of fiduciary duty claim are: 1) the existence of a duty arising from a fiduciary relationship; 2) a failure to observe the duty; and 3) an injury resulting proximately therefrom. *Thomas v. Fletcher*, 2006-Ohio-6685, ¶ 13 (3d Dist.). A "fiduciary" has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such an undertaking. *Camp St. Mary's Assn v. Otterbein Homes*, 2008-Ohio-1490, ¶ 19 (3d Dist.). We have previously stated that "A claim of breach

of fiduciary duty is basically a claim for negligence that involves a higher standard of care." *Id*.

**{¶21}** Pursuant to R.C. 1706.31, members of a limited liability company owe each other fiduciary duties of loyalty and care. Relevant provisions of this statute read as follows:

> (B) Unless either a written operating agreement for the limited liability company or a written agreement with a member establishes additional fiduciary duties or the duties of the member have been modified, waived, or eliminated as contemplated by section 1706.08 of the Revised Code, in the event that there have not been designated one or more managers to supervise or manage the activities of the limited liability company, the only fiduciary duties a member owes to the limited liability company and the other members is the duty of loyalty and the duty of care set forth in divisions (C) and (D) of this section.
>
> (C) A member's duty of loyalty to the limited liability company and the other members is limited to the following:
>
> (1) To account to the limited liability company and hold for it any property, profit, or benefit derived by the member in the conduct and winding up of the limited liability company business or derived from a use by the member of limited liability company property or from the appropriation of a limited liability company opportunity;
>
> (2) To refrain from dealing with the limited liability company in the conduct or winding up of the limited liability company business as or on behalf of a party having an interest adverse to the limited liability company.
>
> (D) A member's duty of care to the limited liability company and the other members in the conduct and winding up of the limited liability company business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

(E) A member shall discharge the member's duties to the limited liability company and the other members under this chapter and under the operating agreement and exercise any rights consistent with the implied covenant of good faith and fair dealing.

(F) A member does not violate a duty or obligation under this chapter or under the operating agreement merely because the member's conduct furthers the member's own interest.

{¶22} In this case, O'Neal alleged that Sanchez and Fields violated their fiduciary duties in the following ways: 1) Sanchez and Fields "usurped control over the Company and its assets, and were engaging in conduct detrimental to the company, including by failing to comply with the requirements of a governmental grant that had been obtained on behalf of the company by O'Neal"; 2) Sanchez and Fields were dissipating, wasting, and converting O'Neal's substantial contributions to the Company; 3) Sanchez and Fields had forced entry into O'Neal's office and removed property belonging to O'Neal and his separate business; 4) Sanchez falsely represented to O'Neal that his ownership interest would be increased; and 5) Sanchez used Company resources to hire other entities owned by her to perform work for the Company for her benefit. (Appt.'s Br. at 6).

{¶23} Before reaching O'Neal's arguments in this assignment of error, it is important to assess the parties' Operating Agreement since R.C. 1706.31(B) indicates that an Operating Agreement can alter member's obligations. Of particular relevance is Section 5.6(a) of the parties' Operating Agreement, which reads as follows:

*5.6 Liability and Indemnification*

*(a) Standard Imposed.* No Member will be liable, responsible, or accountable, in damages or otherwise, to any Member or to the Company for any act performed within the scope of the authority conferred on the Member by this Agreement, except as otherwise provided in the Act.

**{¶24}** Because of Operating Agreement Section 5.6(a), in order for Sanchez and Fields to be liable for breach of fiduciary duty, O'Neal had to show that Sanchez and Fields were acting outside the scope of their authority. As the trial court determined, O'Neal "did not point to evidence that either defendant did anything related to his first cause of action that was not within the scope of the defendants' respective authority." (Doc. No. 71). After reviewing the record, we agree with the trial court.

**{¶25}** O'Neal baldly claimed that he felt Sanchez had "usurped" a grant O'Neal acquired for the Company; however, the grant was awarded *to the Company*, not to O'Neal individually. The "grantee" under the grant agreement was CDC Real Estate. O'Neal never had any type of exclusive authority to administer the grant. In fact, the Company's Operating Agreement indicated that each member had the authority to manage the affairs and business of the Company. O'Neal produced no evidence that Sanchez or Fields were operating outside the scope of their authority with regard to the grant. Further, and perhaps even more importantly, *the grant* to *the Company had not been lost and there was no evidence that the grant was in*

*jeopardy*. Thus there is no actual evidence whatsoever that the grant had been "usurped."

**{¶26}** Similarly, O'Neal produced absolutely no evidence that Sanchez and Fields were "dissipating" "wasting" or "converting" his funds. There was no evidence that money had been taken from the Company and used improperly or that money O'Neal had contributed was improperly distributed. In fact, the only evidence indicated that no money had been distributed from the Company.

**{¶27}** O'Neal also did not have any evidence that Sanchez or Fields specifically broke into his office and took things from him. In addition, he produced no evidence that Sanchez's actions in hiring other entities to work for the Company were either outside the scope of her authority or detrimental to the Company.[3]

**{¶28}** O'Neal's claims, as told through his deposition, were largely based on how he *felt* his role and contributions were undermined rather than on any actual evidence showing wrongdoing by Sanchez and Fields. By way of example, O'Neal claimed that Sanchez repeatedly told O'Neal that his ownership interest would be increased, but this is directly contrary to the Operating Agreement signed by O'Neal and the other members at the Company's inception, which specified that O'Neal's minority ownership interest was based on what he contributed at the Company's inception. To the extent that O'Neal claims there were conversations prior to the

---

[3] To the extent that O'Neal's argument implies that Sanchez was making deals that benefitted her, R.C. 1736.01(F) renders this argument irrelevant unless she was acting to the detriment of the Company, which he has not established.

formation of the Company about him potentially receiving additional ownership interest, subsection 9.4 of the Operating Agreement explicitly rendered those conversations irrelevant.

> 9.4 *Complete Agreement*. This Agreement constitutes the complete and exclusive statement of the agreement among the Members. It supersedes all prior written and oral statements, including any prior representation, statement, condition, or warranty. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of all of the Members.

{¶29} Simply put, the trial court issued a well-reasoned and thorough judgment entry analyzing O'Neal's claims and finding that they did not have the support to defeat the "well-supported summary judgment" motion filed by Sanchez and Fields. After our own review of the record, we find that the Operating Agreement precludes O'Neal's claims because he produced no evidence that Sanchez and Fields were operating outside their authority. Separately, and notwithstanding the Operating Agreement, we find that O'Neal's claims in his first assignment of error are wholly unsupported by documented evidence. Therefore, we find that the trial court properly granted summary judgment in favor of Sanchez and Fields on the breach of fiduciary duty claim.

*Second Assignment of Error*

{¶30} In his second assignment of error, O'Neal asserts that the trial court erred in granting summary judgment in favor of Sanchez and Fields as to his claim for conversion.

**{¶31}** Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. *Warnecke v. Chaney*, 2011-Ohio-3007, ¶ 15 (3d Dist.). Conversion has three primary elements: 1) plaintiff's ownership or right to possess the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages. *Miller v. Cass*, 2010-Ohio-1930, ¶ 32.

**{¶32}** In this case, O'Neal claimed that Sanchez and Fields took O'Neal's personal property from his office. The property purportedly taken included, *inter alia*, "checks, credit cards, tax records, and petty cash."

**{¶33}** Although O'Neal was adamant throughout this case that Sanchez and Fields had converted his property, in his deposition he specifically testified "I don't know who broke into the office." (Tr. at 160). O'Neal later filed an affidavit stating that Sanchez and Fields forced entry into his office and took property belonging to him. The trial court determined that O'Neal's affidavit was inconsistent with his prior deposition testimony and that O'Neal did not provide an explanation for the discrepancy. Citing our decision in *Starkey v. Am. Legion Post 401*, 2010-Ohio-2166 (3d Dist.), the trial court determined that O'Neal's affidavit could not create a genuine issue of material fact when it contradicted his earlier testimony without explanation. The trial court's holding is consistent with our prior decision in *Starkey*, and it is supported here.

**{¶34}** Again, O'Neal *believed* that Sanchez and Fields had converted his property, but he had no actual evidence to support his suppositions. There's no indication that Sanchez and Fields ever used O'Neal's property or were ever in possession of his property. The trial court determined that O'Neal's claim could not survive summary judgment, and we find no error with that decision. Therefore, O'Neal's second assignment of error is overruled.

*Third Assignment of Error*

**{¶35}** In his third assignment of error, O'Neal argues that the trial court erred in granting summary judgment to Sanchez on his claim for fraud.[4]

**{¶36}** A claim of fraud requires proof of the following elements: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49 (1991).

**{¶37}** O'Neal alleged that Sanchez committed fraud because, he claims, Sanchez made numerous representations that he would be "given" additional units

---

[4] O'Neal did not allege a claim for fraud against Fields.

of the company to increase his ownership stake in an amount commensurate with his contributions. Notably, as stated previously herein, this is directly in contradiction to the Operating Agreement.

**{¶38}** In an attempt to undermine the Operating Agreement, O'Neal filed an affidavit alleging that Sanchez continuously told him that his ownership percentage would increase to an amount commensurate with his contribution. Sanchez filed an affidavit stating that she never indicated that O'Neal would be *given* additional units in the company, rather O'Neal would have to purchase the units in the Company per the Operating Agreement.

**{¶39}** The record is clear that the parties had *discussions* about O'Neal acquiring a greater ownership interest. However, as the trial court stated, the general rule is that fraud cannot be predicated upon a representation concerning a future event. *Tibbs v. Natl. Home Constr. Corp.*, 52 Ohio App.2d 281. Representations concerning what will occur in the future are considered to be predictions and not fraudulent misrepresentations.

**{¶40}** Here, there were clearly discussions about O'Neal increasing his ownership, including a proposal for him to purchase 170 additional shares in the company with a potential offset for loans O'Neal had made to the company. However, other than O'Neal's self-serving statements, there is no actual evidence to show that additional ownership shares were going to be *given* to him. In fact, his claim is in direct contradiction to the Operating Agreement, which specifies how

members may acquire new "units." In addition, evidence in the record indicates that in October of 2021, the Company's attorney sent an email to O'Neal stating that if O'Neal had made payments on behalf of the Company *after* the effective date of the Operating Agreement he was entitled to reimbursement, but not a change in the amount of Units of ownership. (O'Neal Depo, Ex. O). There simply is no evidence to support O'Neal's claim for fraud, thus we do not find the trial court erred by granting summary judgment in favor of Sanchez on this issue. Therefore, O'Neal's third assignment of error is overruled.

*Conclusion*

{¶41} Having found no error prejudicial to O'Neal in the particulars assigned and argued, his assignments of error are overruled and the judgment of the trial court is affirmed.

**Judgment Affirmed**

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlm**